**Makana LEE, et al., Plaintiffs,**

v.

**William Von RAAB, et al., Defendants.**

**No. C-2-83-2212.**

United States District Court, S.D. Ohio, E.D.

Dec. 20, 1983.

Adrian V. Hershey, Mascio, Blake, Hershey & Vasilaros, Steubenville, Ohio, Raymond E. Vickery, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiffs.

Christopher Barnes, U.S. Atty., S.D. Ohio, Joseph E. Kane, Asst. U.S. Atty., S.D. Ohio, Columbus, Ohio, for defendants.

## MEMORANDUM OPINION

KINNEARY, District Judge.

This matter is before the Court on plaintiffs' motion for a preliminary injunction and motion for return of property pursuant to Rule 41(e), Federal Rules of Criminal Procedure. A hearing on these motions was conducted on December 12, 1983. Based upon the complaint, the motions, the evidence produced at the hearing and other materials submitted for consideration, the Court herein sets forth its findings of fact and conclusions of law in accordance with Rule 52(a), Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Plaintiffs Makana Lee and Fanny Lee are citizens of Hong Kong and reside in Steubenville, Ohio. Makana Lee manages and operates a business, plaintiff Fort Steuben Company, Inc., which is incorporated in the State of Ohio and has its principal office in the basement of the Lees' residence located on Coal Hill Road in Steubenville. The business of Fort Steuben Company consists of the importation and sale of antiques and artifacts such as wooden furniture, porcelains, rugs, and ivory figures produced in the Orient, primarily Hong Kong.

Shipments of merchandise imported by Fort Steuben Company, Inc., normally pass through customs and enter United States commerce at Pittsburgh, Pennsylvania, and are transported by the Fort Steuben Company from Pittsburgh to Steubenville, a distance of approximately 40 miles. Fort Steuben Company employs a customs broker, R.L. Swearer Company, Inc., in Pittsburgh to prepare and file entry documents for its shipments.

The Lees' residence consists of a single family dwelling house with a detached two-car garage located in a semi-rural residential district. Business records and office equipment of the Fort Steuben Company are kept in the basement of the house. Some of the Company's inventory of merchandise is kept in the basement and in the garage. The major portion of the Company's inventory, however, is stored in a leased warehouse located at 2700 Sunset Boulevard in Steubenville. Business records of the Company are also stored in the warehouse.

On October 20, 1983, five officers and agents of the United States Customs Service, including defendants Hoffman, O'Kane and Schultheis, traveled from the customs office in Pittsburgh to the Lee residence for the purpose of talking to Makana Lee about the status of certain merchandise imported by Fort Steuben Company. This investigation was apparently prompted by a suspicion on the part of customs officers stationed in Pittsburgh that Fort Steuben Company may have falsely claimed exemptions from duties and county-of-origin marking requirements with respect to certain goods. Upon being questioned, Lee was cooperative. At the

agents' request, Lee permitted them to enter the basement of the house and the garage to inspect merchandise stored there. Lee also accompanied the agents to the warehouse at 2700 Sunset Boulevard and permitted them to inspect its contents. Agents Hoffman and O'Kane testified that they observed some merchandise in the basement and in the warehouse on October 20th that may have been imported in violation of county-of-origin marking requirements, and that Lee made statements concerning the age of certain "antique" figurines that might be construed as incriminating admissions. Nevertheless, the agents did not seize any merchandise on October 20th, but simply departed and returned to Pittsburgh.

On the following day, October 21, 1983, three customs agents, including defendant Hoffman, returned to Steubenville and placed padlocks and seals[1] upon all the doors to the basement of the Lees' house, their garage, and the warehouse, including the interior connecting door between the Lees' basement and the rest of the house. This was done without a warrant. Prior to departing, Agent Hoffman handed Mr. Lee two forms, entitled "Receipt for Retained or Seized Merchandise," upon which Hoffman had written that the Customs Service had seized "all contents of cellar and garage" at the Lee residence and "all contents of warehouse." In a space on each form for the designation of the reason for seizure, Hoffman wrote simply "18 U.S.C. § 1001" and "18 U.S.C. § 542".[2] No other explanation for the seizures was given to Mr. Lee.

As a result of this seizure, Lee and other employees of the business were completely denied access to all records, equipment and inventory of the Fort Steuben Company, and the business accordingly was brought to a complete halt. The Lees were denied access to their basement and garage, which contained, in addition to company property, numerous articles of the Lees' personal belongings. The Lees were denied access to their laundry appliances, furnace, water heater, circuit breaker, humidifier and house security system, in addition to being deprived of the use of these premises. While the Lees and the Fort Steuben Company were constructively ejected from their property, customs agents entered onto the sealed premises several times and have undertaken to inspect and inventory their entire contents. Some articles of merchandise have been removed from the premises.

---

1. The seals were in the form of adhesive-backed tape bearing the following legend:

U.S. CUSTOMS SERVICE
WARNING
The shipment is being held for examination and must not be loaded aboard carrier or otherwise removed without authorization of the U.S. Customs Service. Penalty for failure to observe this requirement may be fine and/or imprisonment.

2. Title 18 U.S.C. § 1001 is a criminal statute which provides as follows:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Title 18 U.S.C. § 542, also a criminal statute, provides in pertinent part as follows:

Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or applicance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties; or

Whoever is guilty of any willful act or omission whereby the United States shall or may be deprived of any lawful duties accruing upon merchandise embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission—

Shall be fined for each offense not more than $5,000 or imprisoned not more than two years, or both.

Plaintiffs filed a complaint in this Court on November 23, 1983, seeking damages and injunctive relief, and simultaneously filed motions for a preliminary injunction and for return of property. On December 2, 1983, after a hearing had been scheduled on these motions by the Court, the Customs Service unilaterally removed the padlocks and seals from the Lees' basement and garage. At the time of the hearing, the warehouse remained sealed and the Customs Service was continuing to inspect and inventory its contents. As of the date of the hearing, the Lees had not been served with any notice of a penalty assessment or criminal charges.

## DISCUSSION

Plaintiffs contend that the searches and seizures carried out by defendants violated the Fourth Amendment to the United States Constitution because they were warrantless, unreasonable *per se*, and because they were overbroad in scope. Plaintiffs also contend that the seizures constituted a deprivation of property without due process of law in violation of the Fifth Amendment. In response, the government contends that the inspection of plaintiffs' basement, garage and warehouse on October 20, 1983, was conducted with the consent of plaintiff Makana Lee, that the agents obtained probable cause to believe that seizable merchandise was present within those premises, and that their seizures were authorized under the federal customs laws, specifically, 19 U.S.C. § 1592.[3]

The Fourth Amendment safeguards the privacy and security of individuals against arbitrary invasions by government officials. *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967); *Michigan v. Tyler*, 436 U.S. 499, 504, 98 S.Ct. 1942, 1947, 56 L.Ed.2d 486 (1978). Legitimate expectations of privacy are found in private commercial establishments as well as dwell-

ings, and the protection of the Fourth Amendment extends to both. *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); *Marshall v. Barlows, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Michigan v. Tyler, supra*. The Fifth Amendment, on the other hand, protects against deprivations of property without due process of law. Neither "property" nor "due process" are easily susceptible of definition. It is clear, however, that the right of a lawful owner to possess and control his property, whether personal or real, is the hallmark of our traditional concept of property, and this right of plaintiffs has certainly been infringed. At the outset, therefore, the Court agrees that plaintiffs have asserted interests which lie within the protections of both the Fourth and Fifth Amendments.

The governing principle under the Fourth Amendment is that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Michigan v. Tyler, supra*, 436 U.S. at 506, 98 S.Ct. at 1948; *Camara v. Municipal Court, supra*, 387 U.S. 523, 528–29, 87 S.Ct. at 1730–1731. Defendants admit that they never sought to obtain a search warrant, either before or after October 21, 1983. The Court must consider, then, whether plaintiffs consented to these searches, or whether the searches fall within a recognized exception to the general rule against warrantless searches.

The first inquiry requires no lengthy discussion. It is an elementary principle that the scope of a search authorized by consent may not exceed the terms of such consent. *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). While the evidence tends to support an inference that Makana Lee consented to the agents' first inspection on October 20th, there is absolutely no

---

**3.** As noted in the findings of fact, Agent Hoffman cited two criminal statutes as the grounds for seizure on October 21, 1983. The government now relies on 19 U.S.C. § 1592, a civil penalty and forfeiture statute, as authority for the seizures, and contends that Customs was carrying out a civil investigation at the time of the seizures.

evidence that he consented to the wholesale seizure of his basement, garage and the warehouse on the following day or to the entries and searches conducted thereafter. These distinct invasions clearly exceeded the scope of any consent made by Lee, and in this regard it is simply irrelevant whether or not the customs agents obtained information during the October 20th inspection sufficient to establish probable cause.

Turning to the second question, there is no contention by the government that this case involved exigent circumstances, a search incident to arrest, a search of open fields, or seizure of articles in plain view. Any such contention based on these facts would be untenable. Another exception to the warrant requirement has long been recognized for searches at the border. *See United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). "Border" is an elastic concept, but it cannot be stretched to include the interiors of dwellings or business establishments. *Id.* at 616, 97 S.Ct. at 1978; *United States v. Saint Prix*, 672 F.2d 1077, 1083 n. 10 (2 Cir.1982).

The government here cites as sole authority for conducting a warrantless search the civil enforcement provisions set forth in 19 U.S.C. § 1592, which provides in pertinent part as follows:

(a) Prohibition.—

(1) General rule.—Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

(i) any document, written or oral statement, or act which is material and false, or

(ii) any omission which is material, or

(B) may aid or abet any other person to violate subparagraph (A).

\*    \*    \*    \*    \*    \*

(c)(5) Seizure.—If the Secretary has reasonable cause to believe that a person has violated the provisions of subsection (a) of this section and that such person is insolvent or beyond the jurisdiction of the United States or that seizure is otherwise essential to protect the revenue of the United States or to prevent the introduction of prohibited or restricted merchandise into the customs territory of the United States, then such merchandise may be seized and, upon assessment of a monetary penalty, forfeited unless the monetary penalty is paid within the time specified by law. Within a reasonable time after any such seizure is made, the Secretary shall issue to the person concerned a written statement containing reasons for the seizure. After seizure of merchandise under this subsection, the Secretary may, in the case of restricted merchandise, and shall, in the case of any other merchandise (other than prohibited merchandise), return such merchandise upon the deposit of security not to exceed the maximum monetary penalty which may be assessed under subsection (c) of this section.

Although the government does not articulate its argument in such precise terms, it presumably relies on the "regulatory inspection" exception to the warrant requirement recognized in *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), and, more recently, *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981). In general, this exception provides that regulatory inspections of business premises used in certain pervasively regulated industries may be permitted under the Fourth Amendment without a search warrant when warrantless inspection procedures are specifically authorized by statute. The rationale for this exception is that Congress may substitute its judgment for that of the magistrate in authorizing nonconsensual entries where crucial regulatory interests demand them and where persons en-

gaged in the regulated industry have little legitimate expectation of privacy.

▮ Needless to say, this exception can apply only where Congress has specifically authorized warrantless procedures and such procedures are followed. Upon this point the government's position must fail. While 19 U.S.C. § 1592 provides authority to seize merchandise, it contains no provision for warrantless entries into privately owned buildings to accomplish such seizures. Furthermore, 19 U.S.C. § 1595, a related section that must be read *in pari materia* with § 1592 as part of this statutory scheme, specifically sets forth the procedure for searches of private buildings by customs officers, and clearly contemplates that a warrant will be obtained.[4]

▮ Even if the customs agents were authorized by statute to enter plaintiffs' premises without a warrant, which the Court does not believe to be true, the Court would still have grave doubts as to whether the agents' actions here could survive scrutiny under the overriding Fourth Amendment requirements of reasonableness and specificity. The agents did not limit their seizure to legally seizable merchandise, but indiscriminately seized property which they knew was not subject to seizure, including personal property of the Lees, business records of the company, and, constructively, the buildings themselves. For a period of six weeks thereafter they have undertaken to search, record,

and generally rummage through the entire contents of the warehouse in order to discover seizable merchandise and evidence. It is doubtful that a judicial officer could issue a valid search warrant authorizing an invasion of this magnitude except in the most extreme circumstances, if at all. In this regard, plaintiffs' claim of overbreadth presents a further, persuasive basis for concluding that these searches and seizures violated the Fourth Amendment.

▮ With respect to plaintiffs' due process claim under the Fifth Amendment, the rule of general application is that absent an "extraordinary situation," the power of the state cannot be invoked to seize a person's property without a *prior* judicial determination that the seizure is justified. *United States v. Eight Thousand Eight Hundred and Fifty Dollars in United States Currency*, —— U.S. ——, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). One "extraordinary situation" where a prior hearing is not required is the seizure by government officers of articles subject to forfeiture under law. *Eight Thousand Eight Hundred and Fifty Dollars, supra*, —— U.S. at ——, n. 12, 103 S.Ct. at 2011 n. 12, *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).[5] The precise question

**4.** *Title 19 U.S.C. § 1595 provides as follows:*
Search and seizures
(a) Warrant
  If any officer or person authorized to make searches and seizures shall have cause to suspect the presence in any dwelling house, store, or other building or place of any merchandise upon which the duties have not been paid, or which has been otherwise brought into the United States contrary to law, he may make application, under oath, to any justice of the peace, to any municipal, county, State, or Federal judge, or to any United States magistrate, and shall thereupon be entitled to a warrant to enter such dwelling house in the daytime only, or such store or other place at night or by day, and to search for and seize such merchandise: *Provided,* That if any such house, store, or other building, or place in which such merchandise shall be found, is upon or within ten feet of the

boundary line between the United States and a foreign country, such portion thereof as is within the United States may forthwith be taken down or removed.
(b) Entry upon property of others
  Any person authorized by this chapter to make searches and seizures, or any person assisting him or acting under his directions, may, if deemed necessary by him or them, enter into or upon or pass through the lands, inclosures, and buildings, other than the dwelling house, of any person whomsoever, in the discharge of his official duties.

**5.** The Supreme Court finds justification for this exception on three grounds: First, the seizure of forfeitable merchandise serves important governmental and public interests; second, preseizure notice might serve to frustrate the purpose of the forfeiture statute because the property

presented here, however, is whether Customs agents may accomplish a seizure of forfeitable merchandise contained in private buildings by ejecting the rightful owners of the buildings, padlocking the doors, taking custody of everything in the premises including numerous items of clearly nonforfeitable private property, and maintaining this state of seizure for over one and one-half months, without affording any procedure by which the owners can effectively contest it.

■ The deprivations imposed upon an individual locked out of his dwelling and a business denied access to its offices and records are severe. Conversely, it is difficult to perceive that the manner of seizing merchandise used by Customs in this case served any interest except the agency's own convenience. While the Court does not hold that government officers may never padlock private buildings for the purpose of seizing forfeitable merchandise without a prior due process hearing, it does find that minimum due process requirements are violated when a government agency permits its officers to carry out a seizure like that conducted in this case without providing the owners a meaningful opportunity to challenge the seizure at the earliest possible time. *Cf. Pollgreen v. Morris*, 496 F.Supp. 1042 (S.D.Fla.1980).

■ In determining whether a preliminary injunction should issue, the Court must consider four issues:

(1) Whether plaintiffs have shown a strong or substantial likelihood of success on the merits;

(2) Whether plaintiffs have shown irreparable harm;

(3) Whether the issuance of the preliminary injunction would cause substantial harm to others;

(4) Whether the issuance of the preliminary injunction would serve the public interest.

*Warner v. Central Trust Company*, 715 F.2d 1121 (6th Cir.1983). *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256 (6th Cir.1977). For the reasons discussed above, the Court finds that plaintiffs have shown a strong probability of success on the merits. With respect to the issue of irreparable harm, the evidence demonstrates that plaintiffs' business has been brought to a complete halt by the seizure of the warehouse and its contents. This harm is irreparable and will increase as long as such seizure is continued. In comparison, the harm to others if injunctive relief is granted is slight or nonexistent. While the public interest is served by effective enforcement of the customs laws, it is best served by effective enforcement conducted within the bounds of the government's constitutional authority. Hence, the Court believes that the vindication of plaintiffs' constitutional rights by the issuance of injunctive relief will further the public interest. In accordance with these conclusions, the Court has entered an order preliminarily enjoining defendants from continuing their seizure of plaintiffs' warehouse.

Plaintiffs' motion for return of property under Rule 41(e), Federal Rules of Criminal Procedure, is not precisely duplicative of plaintiffs' motion for a preliminary injunction. In addition to causing the release of the warehouse and its contents from the control of the Customs Service, an order granting relief under Rule 41(e) would also require that defendants be ordered to return any items of merchandise or other evidence previously removed from the plaintiffs' premises, and would have the effect of suppressing the introduction of any such merchandise or evidence by the defendants in any future criminal proceedings. *See United States v. Giacalone*, 541 F.2d 508, 512 (6th Cir.1976). Because the granting of the preliminary injunction af-

could be removed, destroyed or concealed upon advance notice; and third, the seizure is carried out by government officials instead of self-motivated private parties. *Calero-Toledo, supra,* 416 U.S. at 676–680, 94 S.Ct. at 2088–2090. Of

course, the owner of seized merchandise must be given the opportunity to challenge the forfeiture within a reasonable time. *Eight Thousand Eight Hundred and Fifty Dollars, supra.*

fords the plaintiffs immediate and substantial relief, and because no criminal proceedings have yet been instituted, plaintiffs' motion for relief under Rule 41(e) is taken under advisement.