**Makana LEE and Ft. Steuben Co., Inc.,**
**Appellants in No. 85–3339,**

v.

**J. Alan JOHNSON, United States Attorney for the Western District of Pennsylvania, and William von Raab, Commissioner, United States Customs Service, Appellants in No. 85–3321.**

Nos. 85–3321, 85–3339.

United States Court of Appeals,
Third Circuit.

Argued March 6, 1986.

Decided Aug. 7, 1986.

Rehearing and Rehearing In Banc
Denied in No. 85–3339
Sept. 22, 1986.

J. Alan Johnson, U.S. Atty., Paul J. Brysh (Argued), Anthony M. Mariani, Asst. U.S. Attys., Pittsburgh, Pa., for U.S.

W. Thomas McGough, Jr. (Argued), John G. Ferreira, Reed Smith Shaw & McClay, Pittsburgh, Pa., for Makana Lee and Ft. Steuben Co., Inc.

Before GIBBONS, BECKER and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

J. Alan Johnson, United States Attorney for the Western District of Pennsylvania, and William Von Raab, Commissioner of the United States Customs Service, appeal from an order awarding counsel fees, costs, and expenses against the United States pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1982). They contend that no award should have been made. Ft. Steuben Company, Inc. (Ft. Steuben), a plaintiff in the underlying action, cross-appeals from the same order to the extent that it denied reimbursement for certain fees. We affirm the district court award in its entirety.

## I.

Ft. Steuben, an Ohio corporation operating in Steubenville, Ohio, imports and resells oriental artifacts and merchandise. Its principal place of business is located in the basement of the home of Makana Lee, its manager. Ft. Steuben's merchandise normally passes through United States Customs at Pittsburgh, Pennsylvania, where the company employs a customs broker to prepare and file entry documents. On October 20, 1983, five officers of the Customs Service traveled from their Pittsburgh office to Steubenville to investigate certain claimed exemptions from duties and county-of-origin marking requirements with respect to goods imported by Ft. Steuben. The agents questioned Mr. Lee, who cooperated. Lee permitted them to inspect merchandise stored in the basement of his home and merchandise stored in a warehouse at another Steubenville location.

On October 21, 1983, three customs agents returned to Steubenville and padlocked and sealed the doors to the basement of Mr. Lee's house—including the door connecting the house and the basement—his garage, and the Ft. Steuben warehouse. The agents acted without a warrant, and the only explanation they gave Mr. Lee for their action, noted on a "Receipt for Retainer or Seized Merchandise" was that all the contents were seized pursuant to 18 U.S.C. § 542 (1982).[1] Customs Service agents subsequently entered the premises several times to inspect and inventory their contents.

On November 23, 1983, Lee and Ft. Steuben filed in the United States District Court for the Southern District of Ohio an action seeking permanent, injunctive relief and damages. In their complaint they alleged that the actions of the Customs Service agents violated the fourth amendment prohibition against unreasonable seizures as well as the fifth amendment's guarantee of due process. They also requested a preliminary injunction ordering a return of the property.

After the district court scheduled a hearing on the motion for pendente lite relief, the Customs Service unilaterally removed the padlocks and seals from Lee's basement and garage. At the time of the hearing the Customs Service remained in possession of the warehouse and was continuing to inspect and inventory its contents, although it had neither notified Ft. Steuben or Lee of any penalty assessment nor filed any criminal charges. After a hearing, the United States District Court for the Southern District of Ohio, applying the usual standards for pendente lite injunctive relief, entered an order enjoining the Customs Service from continuing the seizure of the warehouse. *Lee v. Raab*, 576 F.Supp. 1267 (S.D.Ohio 1983). Noting that in addition to their request for an injunction Lee and Ft. Steuben had moved pursuant to Federal Rule of Criminal Procedure 41(e) for the return of certain property already removed, the court commented, "Because the granting of the preliminary injunction affords the plaintiffs immediate and substantial relief, and because no criminal proceedings have yet been instituted, plaintiffs' motion for relief under Rule 41(e) is taken under advisement." *Id.* at 1274–75. The Customs Service did not appeal this order.

On February 7, 1984, one of the Customs Service agents who had participated in the October 21, 1983, seizures served on Mr. Lee, as Custodian of Records of Ft. Steuben, a subpoena duces tecum directing him to produce before a grand jury in the Western District of Pennsylvania forty-six categories of records. All of these subpoenaed records had been seized in the illegal October 1983 raid.

Before the return date of that subpoena duces tecum, the district court in Ohio decided the reserved Rule 41(e) motion. That court's order provides:

1. In pertinent part 18 U.S.C. § 542 (1982) provides:

Whoever introduces, or attempts to introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice ... [s]hall be fined for each offense not more than $5,000 or imprisoned not more than two years, or both.

WHEREUPON, upon consideration, the Court determines that plaintiffs' motion for return of property is meritorious, and it is hereby GRANTED. Defendants are ORDERED to return immediately any property taken from the Lees' basement or garage or the Ft. Steuben Company warehouse which remains in defendants' custody or control; and it is further

ORDERED THAT to the extent this Order shall have the effect under Federal Rule of Criminal Procedure 41(e) of suppressing the admission of illegally seized property into evidence in any future trial or hearing, it shall apply to all the property of the plaintiffs which was seized, including, but not limited to, any article of merchandise and any business record or document that was present on the premises of the Lees' basement or garage or the Ft. Steuben Company warehouse at the time these premises were seized on October 21, 1983.

*Lee v. Raab,* C–2–83–2212, slip op. at 4–5 (S.D.Ohio Feb. 13, 1984). This February 13, 1984 order covers all the records listed in the subpoena duces tecum. Again, there was no appeal.

Relying on the two orders issued by the Ohio District Court, Lee and Ft. Steuben filed a complaint in the Western District of Pennsylvania on February 17, 1984. In that complaint they charged that the Customs Service officials had initiated the grand jury investigation in retaliation for Lee and Ft. Steuben's prosecution of the civil suit in the Southern District of Ohio and for the purpose of assisting in the government's defense of that action. They further alleged that the subpoena itself was a fruit of the illegal search and seizure. The plaintiffs sought a preliminary and permanent injunction barring the United States Attorney from continuing the grand jury investigation and barring designated agents of the Customs Service from further participating in any investigation

relating to the illegally-seized property. Lee and Ft. Steuben simultaneously filed in the pending civil action a motion to quash the grand jury subpoena duces tecum and a motion for a preliminary injunction.

The government's response to the plaintiffs' motions did not dispute the complaint's factual allegations. Conceding that the October 1983 seizure was unconstitutional, that the Ohio district court had issued a valid injunction, and that the Ohio district court had issued the February 13, 1984, order quoted above, the government nevertheless contended that it was free to subpoena the very records it had illegally seized and to have the Customs Service agents who had effected the illegal seizure participate in the grand jury proceeding. Government's Response to Defendant's Complaint, *reprinted in* Joint Appendix at 71–82.

On March 12, 1984, a judge of the Western District of Pennsylvania held a hearing on the plaintiffs' motions and heard testimony. Shortly thereafter the district court quashed the subpoena duces tecum, enjoined the government from issuing of any additional subpoenas seeking evidence that the Ohio district court had already suppressed, and enjoined seventeen officials of the Customs Service and certain government attorneys from further participation in the grand jury investigation. *Lee v. Johnson,* Civil Action No. 84–379 (W.D.Pa. Mar. 23, 1984).[2] The government did not appeal from this order, and it remains in effect, along with the orders of the Ohio district court referred to above.

## II.

On June 1, 1984, Ft. Steuben filed in the Western District of Pennsylvania an application seeking reimbursement for costs, attorneys' fees, and expenses it incurred in connection with its suit in that court. In addition to that amount, which totaled $23,-830.81, Ft. Steuben sought reimbursement for the attorneys' fees, costs, and expenses

**2.** The district court transferred to the Ohio district court a motion by Lee and Ft. Steuben seeking disclosure of the identity of the agents

who were participating in proceedings before the grand jury.

that it would incur in prosecuting the fee petition. In support of its petition Ft. Steuben filed detailed affidavits.

The government filed a response to the application, contending that, as a matter of law, Ft. Steuben was not entitled to reimbursement. It filed no affidavits contesting the reasonableness of the hourly rates requested or the reasonableness of the hours expended, nor did it file any affidavits in support of its legal contentions.

At the district court hearing on the petition, the government offered no evidence, choosing to rely entirely upon its legal arguments. Thus the fee application was before the court on Ft. Steuben's application, its uncontradicted affidavits, and the underlying record in the case.

The district court held that Ft. Steuben qualified for reimbursement, *Lee v. Johnson*, C.A. No. 84–379 (W.D.Pa. May 3, 1985), and it entered an order awarding to Ft. Steuben attorneys fees of $17,978.32, and costs and expenses of $2015.01. *See id.* (order). Although it also ordered the government to reimburse Ft. Steuben for attorney fees it incurred in preparing the fee petition, the district court refused to order reimbursement for expenses associated with the subsequent litigation of the fee petition. This appeal and cross-appeal followed.

## III.

### A. The Government's Appeal

The Equal Access to Justice Act provides in relevant part:

[A] court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ..., unless the court finds the position of

the United States was substantially justified. ...

28 U.S.C. § 2412(d)(1)(A) (1982).[3]

The government argued in the district court and argues now to this court that (1) Ft. Steuben was not a "party" as defined by the Act; (2) Ft. Steuben's suit was not a "civil action"; and (3) that the position of the United States was "substantially justified." We address each contention in order.

### (1) Ft. Steuben is an Eligible Party

The Act provides that fees may be awarded to

(i) an individual whose net worth did not exceed $1,000,000 at the time the civil action was filed, (ii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization whose net worth did not exceed $5,000,000 at the time the civil action was filed ... or (iii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization, having not more than 500 employees at the time the civil action was filed. ...

28 U.S.C. § 2412(d)(2)(B) (1982). In its fee application Ft. Steuben alleged that it is a corporation that did not have more than 500 employees at the time the action was filed, an allegation the government did not dispute. Since the quoted statutory language unambiguously characterizes the three eligibility provisions as being disjunctive and since Ft. Steuben's undisputed allegation about its number of employees satisfies the third provision, Ft. Steuben appears to qualify as a party under the Act. Nevertheless, the government took the position in the trial court that Congress intended that provisions (ii) and (iii) be conjunctive conditions and thus that, because Ft. Steuben's petition does not allege that Ft. Steuben satisfies provision (ii), Ft. Steuben was not eligible for reimbursement. It presses that argument here.[4]

---

3. This section expired by its terms on October 1, 1984. *See* Pub.L. 96–481 § 204(C), 94 Stat. 2321, 2329. However, Congress recently revived the Act in a way so as to have made it effective at all times relevant to this case. Act of Aug. 5, 1985, Pub.L. 99–80, § 6, 1985 U.S. Code Cong. & Ad.News (99 Stat.) 183, 186.

4. In addition the government contended that, because the Act is a waiver of sovereign immunity, Ft. Steuben could not amend its application to show that its net worth did not exceed $5,000,000. Because the district court rejected the government's contention that the statute should be rewritten, it did not reach the ques-

To construe the provisions as suggested by the government, we would have to read them as if they were written as follows:

(i) an individual whose net worth did not exceed $1,000,000 at the time the civil action was filed, [*or*] (ii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization whose net worth did not exceed $5,000,000 at the time the civil action was filed ... [*and*] (iii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization, having not more than 500 employees at the time the civil action was filed....

The addition of the disjunction "or" after the first clause and the substitution of the conjunction "and" after the second clause both would be required if the section were to retain any meaning.

■ The district court held, and we agree, that courts are not free to resort to such extensive statutory revision to cure claimed congressional drafting errors. Twice before this court has without discussion read the Act's party-qualification provisions literally and disjunctively. *See Citizens Council v. Brinegar*, 741 F.2d 584, 589 (3d Cir.1984); *Natural Resources Defense Council, Inc. v. Environmental Protection Agency*, 703 F.2d 700, 704 n. 4 (3d Cir.1983). We decline to depart from these precedents and find that the district court properly held that Ft. Steuben's undisputed allegations placed it within the Act's coverage.[5]

(2) Ft. Steuben's Suit is a Civil Action

The Act limits reimbursement to a prevailing party in a "civil action." 28 U.S.C. § 2412(d)(1)(A) (1982). The government contends that Ft. Steuben's action was not a civil action because the relief it requested was the quashing of a grand jury subpoena.

■ The government's position encounters several obvious difficulties. First, its characterization of the requested relief is hardly a fair description of the relief sought and obtained by Ft. Steuben, for as noted above, Ft. Steuben sought and obtained an injunction against the United States Attorney and against seventeen agents of the Customs Service. Second, both Ft. Steuben's action and the action upon which it was predicated—that in the Southern District of Ohio—were filed and captioned as civil proceedings and were adjudicated pursuant to the Federal Rules of Civil Procedure. Third, the interests Ft. Steuben sought to vindicate (privacy, property, and due process) ordinarily are protected by civil actions. Fourth, the relief Ft. Steuben sought and obtained was injunctive relief, which is typically civil. Finally, no determination of guilt or innocence was sought, required, or made.

Despite these obstacles, the government urges that any legal process that is in any way related to the enforcement of a grand jury subpoena should be deemed to be criminal rather than civil for purposes of the Equal Access to Justice Act. It relies principally upon the line of cases emanating from *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), in which the Supreme Court held that before an appellate court may review an order enforcing or refusing to quash a subpoena the party to whom it is directed must

tion, decided by this court in *Dunn v. United States*, 775 F.2d 99 (3d Cir.1985), whether technical deficiencies in the allegations in a fee application could be cured after the expiration of the Act's thirty-day time limit.

In *Dunn* we answered that question affirmatively. *Id.* at 104. Thus, even if we were to rewrite the statute in the manner suggested by the government, at best a remand would be required to permit the government an opportunity to contest the accuracy of Ft. Steuben's representation before this court that its net worth is less than $5,000,000. However, in light of our disposition of the government's statutory interpretation claim, we need not address the issue of remand.

5. We acknowledge that two other Courts of Appeals have interpreted the qualifying provisions in the manner suggested by the government here. *See Unification Church v. I.N.S.*, 762 F.2d 1077, 1090–91 (D.C.Cir.1985); *Missouri Pacific Truck Line v. United States*, 746 F.2d 796, 797–98 (Fed.Cir.1984). We choose not to embark on so bold a venture.

stand in contempt. *See, e.g., United States v. Ryan,* 402 U.S. 530, 532–33 (1971); *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798, 800 (3d Cir.1979).

These authorities stand for the proposition that orders that ordinarily would be appealable under 28 U.S.C. § 1291 (1982) are interlocutory until after an adjudication of contempt when they involve potential interference with the progress of a grand jury investigation. They tell us nothing, however, about the civil or criminal nature of proceedings relating to subpoena enforcement. And neither of the rules of federal procedure that discuss contempt in this context specify the nature—civil or criminal—of such an enforcement proceeding. *See* Fed.R.Civ.P. 45(f); Fed.R.Crim.P. 17(g).

The fact that the subpoena calls for an appearance before a grand jury is not determinative. A contempt proceeding aimed at coercing compliance with a grand jury subpoena is civil in nature. *Shillitani v. United States,* 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966). A contempt proceeding aimed not at coercing compliance but at punishing a contemnor for past defiance of the process of a court is criminal in nature. *See Bloom v. Illinois,* 391 U.S. 194, 201–02, 88 S.Ct. 1477, 1481–82, 20 L.Ed.2d 522 (1968) (holding that consequences of criminal contempt proceedings entitled defendants to Constitution's jury trial provisions); *United States v. United Mine Workers,* 330 U.S. 258, 302–04, 67 S.Ct. 677, 700–02, 91 L.Ed. 884 (1947) (discussing different policies underlying civil and criminal contempt). Thus the nature of the relief sought, not the nature of the proceeding for which a subpoena issues, determines whether legal process related to enforcement of the subpoena is civil or criminal. In this case there is no question about the civil nature of the relief sought and obtained by Ft. Steuben. It sought not to have the defendant federal officers sentenced for violation of the law,

but to have them enjoined from further wrongdoing.

In dissent Judge Becker contends that the legislative history of the EAJA, as described by the Court of Appeals for the Second Circuit, indicates that a motion to quash a grand jury subpoena is not a "civil action" within the meaning of the Act. *Infra,* at 43–45. While Judge Becker accurately describes the Second Circuit's characterization of the Act's legislative history as indicating a congressional desire "to encourage challenges to improper actions by government agencies," *infra,* at 43, his conclusion that that goal compels the interpretation he advocates is tenuous. Indeed, we believe that the legislative intent to encourage citizens to challenge improper governmental action favors the conclusion that the plaintiffs in this case should be entitled to recover under the Act. In light of the determination in the civil actions in Ohio, from which the government did not appeal, the subpoena duces tecum directing Mr. Lee to produce all of the records illegally seized in the October, 1983 raid was nothing more than a deliberate effort to circumvent the finality of the decisions in the civil actions in Ohio and extend that litigation into Pennsylvania. Judge Becker also points to *Thomas v. Boudin,* 732 F.2d 1107 (2d Cir.1984), a case in which the Second Circuit concluded that a petition for habeas corpus relief was not a civil action for purposes of the EAJA. While as we note below, *see infra* at 40, *Boudin* provides some support for the government's position in this case, habeas corpus petitions directed to government custodians of convicted criminal defendants differ significantly from motions to quash grand jury subpoenas. Habeas corpus petitions in form and in fact seek review of judgments of conviction. Thus assuming *arguendo* that *Boudin* was correctly decided, *but see Ewing v. Rodgers,* 627 F.Supp. 1366 (D.Colo.1986) (holding that petition for habeas corpus is a civil action for purposes of EAJA), *reported in* 38 Crim.L.Rep. (BNA) 2425 (Mar. 5, 1986), it is clearly distinguishable from the case before us.

We hold, therefore, that Ft. Steuben's suit is a "civil action" for purposes of the Equal Access to Justice Act.[6]

### (3) The Position of the United States Was Not Substantially Justified

The Equal Access to Justice Act directs payment of fees to the prevailing party "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A) (1982). This court has held:

> The government has the burden of proving that it was substantially justified. To satisfy its burden the government must demonstrate (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.

*Donovan v. Dialamerica Marketing, Inc.,* 757 F.2d 1376, 1389 (3d Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985). *Accord Washington v. Heckler,* 756 F.2d 959, 961 (3d Cir.1985); *Citizens Council,* 741 F.2d at 593. The district court found that "the government has utterly failed to show that its position was 'substantially justified' much less even attempt to meet the three-part test continually enunciated by the Court of Appeals for the Third Circuit." *Lee,* C.A. 84–379, slip op. at 10.

The facts are not in dispute. Rather, the government alleges that given the undisputed facts it had a reasonable basis in law for attempting to circumvent the orders of

the Ohio district court by serving a grand jury subpoena returnable in the Western District of Pennsylvania. The standard for determining whether, for purposes of the Act, a party has a reasonable basis in law for a position was set out by this court in *Washington v. Heckler,* 756 F.2d 959 (3d Cir.1985):

> If ... the case turns on an usettled or "close question of law", ... the government usually will be able to establish that its legal theory was "reasonable," even if it was not ultimately accepted as legal by the courts. When the government's legal position clearly offends legal precedent, however, its position cannot be said to be "substantially justified."

*Id.* at 961–62. Therefore, for the government, in relying entirely upon a legal argument, to establish that its position was substantially justified, it must demonstrate that that argument presented an unsettled or close question of law.[7]

### a. The Substantive Claims

With respect to the reimbursement the district court awarded for expenses incurred by Ft. Steuben in prosecuting the underlying action, the government's position is that because under *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), a grand jury witness cannot invoke the exclusionary rule to bar questioning based on illegally-obtained evidence, the customs agents reasonably could have assumed that they could subpoena evidence covered by the orders of the Ohio

---

**6.** We are aware that the Court of Appeals for the Second Circuit, relying on the fact that the function of the grand jury is to prefer charges in criminal cases, recently held that a motion to quash a grand jury subpoena is not a civil action for purposes of the Act. *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels),* 775 F.2d 499, 503–04 (2d Cir.1985). However, *Simels* is distinguishable from this case, in which the party seeking reimbursement sought and obtained broad injunctive relief going beyond the quashing of a subpoena. Even if *Simels* were more directly in point, however, we would find it to be unpersuasive, since it makes no reference to the settled distinction between civil and criminal enforcement proceeding.

**7.** The House Report accompanying the 1985 legislation reviving the EAJA suggests that to meet

the substantial-justification standard the government must do more than demonstrate that its position was reasonable. *See* H.Rep. No. 99–120, 99th Cong., 1st Sess. 9, *reprinted in* 1985 U.S. Code Cong. & Ad.News 132, 138 ("Because in 1980 Congress rejected a standard of 'reasonably justified' in favor of 'substantially justified,' the test must be more than mere reasonableness"). The doctrinal standard articulated in our *Heckler* opinion and reaffirmed in this opinion is consistent with that language. To establish that its position was substantially justified, the government must show more than that position was merely reasonable; it must also demonstrate that the position presented an unsettled or close question of law.

district court. The district court rejected this contention, but that is not dispositive, for in *Heckler* we held that the reasonableness of the government's legal position is a matter over which our review is nondeferential. 756 F.2d at 962.

Had the government sought appellate review of the February 13, 1984 order of the Ohio district court it might have advanced the contention that *Calandra* overruled *Silverthorne Lumber Company, Inc. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The latter case holds that a person, served with a subpoena duces tecum directing him or her to produce material about which the grand jury had knowledge only as a result of a prior, unlawful search and seizure, need not respond to the subpoena. *Id.* at 391–92. The opinion of the Court in *Calandra* distinguishes *Silverthorne* on the ground, among others, that in *Silverthorne* "prior to the issuance of the grand jury subpoenas, there had been a judicial determination that the search and seizure were illegal." 414 U.S. at 352 n. 8, 94 S.Ct. at 622 n. 8. An appellate court, reviewing the Ohio district court orders, might nevertheless have found the government's argument reasonable.

■ The issue is not before us, however, in the posture of reviewing the actions of the Ohio district court. Plainly, the Customs Service's purpose in obtaining the grand jury subpoena, and in continuing to seek its enforcement after it was resisted, was to have the district court in the Western District of Pennsylvania collaterally attack the orders of a district court in Ohio. The government has pointed to no authority other than *Calandra* in support of the substantialness of that position and *Calandra*, which did not involve a collateral attack on another court order, does not support that position. Thus we agree with the district court that the government has failed to show that its position was substantially justified.

b. The Fee-Petition Preparation

In addition to ordering the government to reimburse Ft. Steuben for fees and expenses it incurred in prosecuting the underlying action, the district court also ordered it to reimburse Ft. Steuben for expenses associated with the preparation of the fee petition, expenses that totaled $3,779.94. The government challenges this order, contending that, although its challenge to the award of fees was rejected, its opposition to that award was substantially justified.

■ Whether the government's position vis-a-vis the fee petition was substantially justified is not relevant to the $3,779.94 at issue here. The services in that sum were rendered for the purpose of bringing the fee petition to the court's attention. Those services were necessary whether or not the government contested any fee award. They were not rendered in connection with litigation over the propriety of an award of any fees, for until the government filed its response to the application there was no such litigation. The government's "substantially justified" contention relates only to the propriety of reimbursing Ft. Steuben for services rendered after the government took the position that no fees should be awarded, an issue that is discussed below. The district court did not err in ordering the government to reimburse Ft. Steuben for fees relating to preparation of the fee petition.

B. Ft. Steuben's Cross-Appeal

Ft. Steuben cross-appeals from the fee order, objecting to it because the district court refused to allow Ft. Steuben to recover fees and expenses it incurred in litigating the fee application in face of the government's position. While it is true that under the Act a party can recover fees incurred in litigating a fee petition, *cf. Prandini v. National Tea Company*, 585 F.2d 47, 53–54 (3d Cir.1978) (awarding fee-petition expenses to Title VII plaintiff), the Act authorizes such recovery only in those instances in which the government's opposition to such award is not substantially justified. While we have rejected the three legal contentions raised by the government in opposition to the reimbursement for fees

**40**

and expenses associated with the underlying action, the substantiality of the government's opposition to the fee petition does not turn, exclusively, on the ultimate merits of its underlying legal position. This is so because a court might conclude that, while the government's underlying position was not substantially justified, its opposition to a fee application is substantially justified.

One of the three legal contentions advanced by the government in opposition to Ft. Steuben's fee application was that Ft. Steuben did not qualify as an eligible party under the Act. We have rejected that contention. Yet, at the time the government pressed that contention before the district court one Court of Appeals arguably had accepted it, *see Missouri Pacific Truck Line v. United States*, 746 F.2d 796 (Fed. Cir.1984), and after the district court ruled on the fee application in this case the Court of Appeals for the District of Columbia expressly accepted it, *see Unification Church v. I.N.S.*, 762 F.2d 1077 (D.C.Cir. 1985). Thus it cannot be said that the government's position on this point, even though in our view wrong, did not present an unsettled or close question of law.

The substantiality of its second legal contention—that the underlying case was not a "civil action"—presents a closer question. In advancing that contention the government relied on the holding in *Thomas v. Boudin*, 732 F.2d 1107 (2d Cir.1984), that a federal prisoner's habeas corpus petition did not constitute a civil action for purposes of the Act. That case is not directly on point, but its reasoning certainly lends some support to the government's proposed restrictive interpretation of the "civil action" language in the statute.

The government's third legal contention—that its position in the underlying action was substantially justified—does not present a close question. That is not dispositive, however, since the government would have prevailed in the fee dispute if the district court had accepted any one of three grounds the government advanced in its opposition to the fee application.

■ We conclude that, measured by the standard announced in *Washington v. Heckler*, at least one and probably two of the government's legal contentions presented unsettled or close questions of law. That being so, the government's opposition to the fee award was substantially justified. The district court did not err, therefore, when it denied Ft. Steuben's request to supplement its fee application to account for fees incurred in litigating the government's opposition to its fee request.

## IV.

The government's legal objections to the award of fees, costs, and expenses all lack merit. Ft. Steuben's appeal from the denial of its request to supplement its fee application also lacks merit. The order appealed from will therefore be affirmed in all respects.

ROSENN, Circuit Judge, concurring.

I join in Judge Gibbons' opinion in all respects except that my view of the reasonableness test for "substantial justification" of the Government's position is more stringent than that set forth in part III A(3). When this court considered the fee issue in *Washington v. Heckler*, 756 F.2d 959 (3d Cir.1985), it did not have the benefit of the 1985 amendments to the Equal Access to Justice Act, 28 U.S.C.A. § 2412 (West Supp.1986) (the Act). Several months after the *Washington* decision, Congress renewed the Act retroactively in amended form. Pub.L. No. 99–80, 99 Stat. 183 (1985) (the Amendments). Congress in enacting the Amendments intended to clarify the Act. *See* H.R. No. 120, 99th Cong., 1st Sess. 21 (1985), *reprinted in* 1985 U.S. Code & Cong. & Ad.News at 149. The need for such clarification is reflected in Chief Judge Aldisert's concurring opinion in *Washington*, 756 F.2d at 968–70. The legislative history pertaining to the amendments persuades me that Congress intended that an evaluation of "substantial justification" under the Act requires more than a marginal standard of reasonableness.

In the original legislative history of the Act, the House Judiciary Committee stated that "[t]he test of whether or not a government action is substantially justified is essentially one of reasonableness." H.R. Rep. No. 1418, 96th Cong., 2d Sess. 13, *reprinted in* 1980 U.S. Code Cong. & Ad. News at 4953, 4992. In its report accompanying the Amendments, the Committee stated that in evaluating substantial justification, "the test must be more than mere reasonableness." H.R.Rep. No. 120, *supra* at 9, *reprinted in* 1985 U.S.Code Cong. & Ad.News at 132, 138.[1] In reconciling these expressions of congressional intent, I believe that Congress did not intend a reasonableness standard for substantial justification of government action to be weak or relaxed. In meeting that standard, I conclude that the Government now must show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct. *United ed States v. 1,378.65 Acres of Land,* 794 F.2d 1313, (8th Cir.1986). *See Gavette v. Office of Personnel Management,* 785 F.2d 1568, 1579 (Fed.Cir.1986) (in banc); *Mc-Donald v. Schweiker,* 726 F.2d 311, 316 (7th Cir.1983). *But see Russell v. National Mediation Board,* 775 F.2d 1284, 1289 (5th Cir.1985) (finding legislative history irreconcilable and retaining reasonableness standard).

Under such a standard—or even the less demanding standard described by Judge Gibbons—the Government has failed to show that its position was substantially justified. I therefore agree that the order appealed from must be affirmed in all respects.

BECKER, Circuit Judge, dissenting.

I believe that Ft. Steuben's action was not a civil action for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412 (1985) ("EAJA"). Because the EAJA provides for an award of attorney's fees to prevailing parties in civil actions only, 28 U.S.C. § 2412(d)(1)(A), I conclude that the judgment of the district court should be reversed.[1] There is no definition of "civil action" in the EAJA, and hence we must determine the nature of a particular action by first studying its characteristics and then viewing them in relation to the purposes of the EAJA.

## I.

In their complaint, the plaintiffs sought several sorts of relief: (1) an injunction against the participation of various representatives of the United States Customs Service in the grand jury investigation; (2) an order requiring defendants Johnson and Von Raab to disclose to Mr. Lee and Ft. Steuben, pursuant to Fed.R.Crim.P. 6(e), information gathered in the course of the grand jury investigation and shared with agents of the Customs Service; (3) an order quashing the grand jury subpoena issued to Ft. Steuben; and (4) an injunction against any further grand jury investigation of Ft. Steuben in the Western District of Pennsylvania. At the hearing before the district court, counsel for the plaintiffs withdrew the request that the grand jury proceeding be entirely enjoined. The district court ordered that the request for disclosure under Rule 6(e) be transferred to the Southern District of Ohio for disposi-

---

1. The report cited approvingly four court decisions applying a test slightly more stringent than reasonableness for substantial justification. H.R.Rep. No. 120, *supra* at 9 n. 15, *reprinted in* 1985 U.S. Code Cong. & Ad.News at 138 n. 15; *see, e.g., Spencer v. NLRB,* 712 F.2d 539, 558 & n. 67 (D.C.Cir.1983) (citing other cases), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). In a report accompanying a prior version of the Amendments, which was enacted by Congress but vetoed by the President for reasons unrelated to substantial justification, *see* 20 Weekly Comp.Pres.Doc. 1814–15 (Nov. 12, 1984), Congress explicitly adopted the "slightly more stringent" language and stated that one of the purposes of the test was to ensure that "only sound, well-prepared cases be initiated" by the Government. S.Rep. 586, 98th Cong., 2d Sess. 11–12.

1. In view of this conclusion, I need not reach the other two questions considered by the majority, whether 28 U.S.C. § 2412(d)(2)(B) applies to Ft. Steuben and whether the position of the United States was substantially justified.

tion, and granted the other requested relief.

In finding that this action is civil, rather than criminal, the majority focuses primarily on the relief requested. It points out that the plaintiffs sought and obtained injunctive relief, which is typically civil, and stated that the interests the plaintiffs sought to vindicate—privacy, property and due process—are ordinarily protected by civil actions. Maj.Op. at 36. While I agree that the relief sought is one factor in the determination whether an action is civil or criminal for the purposes of § 2412(d)(1)(A), I do not believe that it is dispositive, for other factors must also be considered. In particular, the majority's analysis is incomplete because it does not focus sufficiently on the context in which the relief was sought or the effect of the relief.

The plaintiffs' request for relief was made in the course of a grand jury investigation. The relief sought went to the heart of the grand jury proceedings and could significantly limit the scope of the investigation. I agree with the majority that the obvious relationship of grand jury investigations to criminal proceedings should not lead us automatically to categorize all actions arising during grand jury investigations as criminal. *See* Maj.Op. at 37. However, I think that it is equally devoid of subtlety to focus, as the majority does, only on the fact that the relief sought is injunctive. Such an approach ignores any possible connection between the relief sought and the criminal investigation. We must consider what the relief *actually* achieved, what effect it *actually* had. In this case, the fact that the relief had a direct impact on the conduct of the grand jury proceeding—and hence on the viability of a prosecution—is a strong indication that the action was criminal in nature.

A comparison of the plaintiffs' action in the Southern District of Ohio with their action in the Western District of Pennsylvania demonstrates that the Pennsylvania action (the action for which the plaintiffs are now seeking attorney's fees) is essentially criminal. The plaintiffs vindicated their privacy, property and due process interests in the action that they brought in the Southern District of Ohio. Most significantly, it was through the Ohio action that they reacquired possession of their property. In the (subsequent) action in the Western District of Pennsylvania, the plaintiffs sought only to prevent the government from using the fruits of the illegal search and seizure to procure an indictment against them. This action involved the protection of privacy and property interests only incidentally; its chief function was as a defense strategy against the grand jury investigation and the indictment that might follow that investigation. Indeed, the plaintiffs originally sought in the Western District of Pennsylvania to enjoin the entire grand jury proceeding, thus demonstrating the clear goal of their action.

The majority all but ignores the fact that the plaintiffs obtained quashal of the grand jury subpoena issued to Ft. Steuben. This relief was a direct obstacle to the government's conduct of a grand jury investigation. The majority similarly fails to acknowledge the extreme limitation on the government's ability to obtain an indictment that was caused by the injunction against the participation in the grand jury proceeding of seventeen Customs Service agents familiar with the matter. Like the quashal of the subpoena, this injunctive relief was related to the central purpose of a proceeding that is essentially criminal in nature.

Under the circumstances, it is clear that in initiating the grand jury proceedings, the government intended as the ultimate result the conviction and sentencing of the plaintiffs for violation of the law. Since the effect and evident intent of the plaintiffs' action was to defend against the government's criminal investigation, the action was not different from a motion to suppress evidence in a criminal case. A suppression motion would certainly not be considered civil for purpose of the EAJA. It is elevation of form over substance to distinguish this case from a suppression motion

on the basis that it was docketed under its own civil docket number.

## II.

Having described the nature of the plaintiffs' action, I turn my attention to the EAJA, for the issue to be decided here is whether the action is civil *under the EAJA*, not whether it is civil for any other purpose. Although the majority discusses the civil-criminal distinction without specific reference to the EAJA, the policies underlying that statute must guide any analysis of the issue.[2]

When it passed the EAJA, Congress waived the federal government's long-standing immunity to attorney's fees and costs in civil actions. A waiver of immunity must be explicit; hence, the EAJA necessarily applies only to actions that are clearly civil in character. We must therefore analyze the purposes of the EAJA in some detail to determine whether it was clearly intended to waive governmental immunity in cases such as this. An analysis of the policies underlying the EAJA leads to the conclusion that the plaintiffs' action is not civil for the purposes of the statute, for those policies do not support an award of attorney's fees in this case.

In *Boudin v. Thomas*, 732 F.2d 1107 (2d Cir.1984), the Second Circuit analyzed the legislative history of the EAJA and the policies underlying it, in holding that habeas petitions are not civil actions under § 2412(d)(1)(A). Because the court's reasoning in that case is applicable to the issue in this suit, I shall use *Boudin* as the starting point of my analysis. The *Boud-*

*in* court noted that Congress' intent in authorizing fee awards was to "ensure that the cost of litigating against unreasonable government action would not be disproportionate to the potential gain from winning the litigation." 732 F.2d at 1113. Thus, the EAJA was enacted partly to encourage challenges to improper actions by government agencies. *Id.* at 1114. The drafters believed that such challenges would help to formulate public policy. *Id. See* H.R.Rep. No. 1418, 96th Cong., 1st Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4988–89.

These legislative goals, the Second Circuit found, did not support an award of fees to a successful habeas petitioner. The court pointed out that there is no need for financial encouragement of habeas proceedings, for the costs of litigation will rarely deter the person from seeking adjudication. *Boudin*, 732 F.2d at 1113. The court also noted that because a habeas petition is not financial litigation, there will likely be no balancing of potential financial gain from the habeas action against the costs. *Id.* Finally, the court observed, habeas petitions are not aimed at refining rules and policies; rather, they are "dedicated to vindicating individual rights based on the Constitution." *Id.* at 1114.

I believe that the *Boudin* court's analysis is sound. Applying it to this case leads to the conclusion that the plaintiffs' action is *not* civil under the EAJA. There is no need to encourage litigants to seek the relief that was granted in this case, for the relief was an effective defense strategy to

---

**2.** For this reason, the label given to the action is virtually irrelevant to whether it is civil under § 2412(d)(1)(A) of the EAJA, for the clerk who assigns a docket number to an action presumably does not have the purposes of the EAJA in mind when he or she does so. *See* Boudin v. Thomas, 732 F.2d 1107, 1112 (2d CIR.1984) (fact that habeas proceedings are generally labeled "civil" does not mean that they are entirely civil in nature or, specifically, that they are civil under the EAJA). *Cf. Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) (contempt proceeding to coerce compliance with a grand jury subpoena is civil even though it is labelled "criminal contempt"). I

therefore find erroneous the majority's reliance on the fact that the action was filed and captioned as a civil proceeding and was adjudicated pursuant to the Federal Rules of Civil Procedure. Maj.Op. at 37.

Moreover, because the question is whether this action is civil for the purposes of the EAJA, it is not dispositive, or even significant, that the plaintiffs did not seek "to have the defendant federal officers sentenced for violation of the law." Maj.Op. at 37. The important circumstance is that this action arose in the context of a grand jury investigation and was integrally related to the very purpose of that proceeding.

a threatened criminal prosecution. Nor can the costs to the plaintiffs be weighed against the financial benefits they received. Finally, the plaintiffs' action was one dedicated to vindicating individual rights, rather than to challenging government policy and thereby formulating new policy. For all these reasons, the plaintiffs' claim for attorney's fees, costs and expenses is not consonant with the policies animating the EAJA.

Not only is there no policy reason to encourage injunctive actions during the course of grand jury proceedings, but there is a policy interest in discouraging such actions—the desirability of expeditious and unimpeded grand jury investigations. This policy has led the Supreme Court to reject application of the exclusionary rule to grand jury proceedings. *See United States v. Calandra,* 414 U.S. 338, 350, 94 S.Ct. 613, 621, 38 L.Ed.2d 561 (1974). It also underlies the rule that persons who resist grand jury subpoenas through motions to quash cannot seek appellate review of an adverse decision unless they are held in contempt. *See Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *In re Grand Jury Proceeding (PMC Corporation),* 604 F.2d 798, 800 (3d Cir.1979).

While these cases do not address the civil/criminal distinction, they do reflect a policy favoring insulation of the grand jury process from disruptive litigation. It would contravene that policy to permit persons to collect attorney's fees and costs for actions that hinder the grand jury process. Therefore, in the absence of strong evidence that Congress intended to allow attorney's fees and costs in such suits, the EAJA should not be read so broadly.[3]

In an opinion written by Judge Friendly, subsequent to *Boudin,* the Second Circuit

has reached a conclusion almost identical to the one I reach in this case, holding that a motion to quash a grand jury subpoena was not a "civil action" within 28 U.S.C. § 2412(d)(1)(A). *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels),* 775 F.2d 499 (2d Cir.1985). The court drew an analogy between a motion to quash a grand jury subpoena and defensive motions in a criminal suit. According to the court:

It is common ground that 28 U.S.C. § 2412(a) does not authorize the award of costs against the Government in favor of an acquitted defendant. It would seem quite incongruous that such a defendant—indeed, on [the plaintiff's] logic, even a convicted defendant—could recover costs incurred on a successful motion to quash a trial subpoena or a successful appeal from the denial of such a motion.

775 F.2d at 502.

The *Simels* court pointed out that a grand jury proceeding is essentially criminal in nature, "even though its functioning, like the criminal trial itself, may give rise to collateral controversies, such as motions to quash subpoenas, where criminality is not an immediate issue." *Id.* at 502. The court concluded that in making the broad distinction between the civil and the criminal worlds in the EAJA, "Congress did not intend the statute to be so expanded as to include collateral matters arising from criminal trials or from grand jury investigations preceding them." *Id.* Unlike the majority, *see* Maj.Op. at 38 n. 6, I am persuaded by the *Simels* reasoning. Moreover, I do not find this case distinguishable, as does the majority, on the ground that the plaintiffs requested injunctive relief going beyond the quashing of a subpoena. The injunctive relief was so similar in ef-

---

**3.** The majority misses the point of the government's reliance on the *Cobbledick* line of cases, for its dismisses those cases by stating that they "tell us nothing ... about the civil or criminal nature of proceedings relating to subpoena enforcement." Maj.Op. at 37. Although those cases do not address the civil/criminal distinction, they do reflect an established public policy,

which, in turn, assists us in determining the congressional intent behind § 2412(d)(1)(A) of the EAJA. Specifically, it helps us to determine whether Congress intended to encourage, by a waiver of sovereign immunity in the nature of a grant of attorney's fees and costs under the EAJA, actions that delay the grand jury process.

fect to the quashal, *see supra* at p. 33, that *Simels* applies equally to it.

### III.

I agree with the majority that the actions of the Customs Service in this case were offensive, and I sympathize with the plaintiffs' attempt to apply the fee-shifting statute to compensate legal efforts to vindicate such egregious violations of civil rights. However, we do not have a roving charter to grant attorney's fees, only the limited charter created by the EAJA.

The foregoing considerations lead me to conclude that Congress did not intend to waive the government's immunity to attorney's fees and costs with respect to actions such as this. The plaintiffs' suit was simply too intertwined with the workings of a criminal proceeding, and its motivation too far removed from the policies animating the EAJA, to qualify as a civil action under that statute. I respectfully dissent.