**Jack E. COUP, Appellant,**

**v.**

**Margaret HECKLER, Secretary of Health and Human Services.**

**No. 87–3252.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 28, 1987.

Decided Nov. 23, 1987.

E. David Harr (argued), Greensburg, Pa., for appellant.

Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Supervisory Asst. Regional Counsel, Lawrence J. Harder (argued), Asst. Regional Counsel, Dept. of Health and Human Services, Philadelphia, Pa., J. Alan Johnson, U.S. Atty., Amy Reynolds Hay, Asst. U.S. Atty., W.D. Pa., Pittsburgh, Pa., for appellee.

Before GIBBONS, Chief Judge, MANSMANN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Jack E. Coup, an applicant for Social Security Act disability benefits, and his attorney, appeal from orders of the district court: 1) approving the determination of the Secretary of Health and Human Services that he should be awarded disability benefits from January, 1983 rather than from January, 1980; 2) denying Coup's application for an award of fees from the government under the Equal Access to Justice Act; and 3) fixing the amount of the fee to be paid by Coup to his attorney at $1,470. Coup contends that the Secretary reopened a 1980 application, and thus that disability payments should run from the January 1980 onset date of his disability. He also contends that there should be a fee award against the government because its position was not substantially justified. Finally Coup, or more precisely his attorney, contends that the district court erred in limiting the attorney's recovery from Coup to $1,470. We will reverse the district court's order fixing January 1983 as the date from which disability payments should be paid as well as the order denying Coup's claim under the Equal Access to Justice Act. We will vacate the order limiting the amount of the attorneys fee to be paid to Coup's attorney, and remand for a reconsideration in light of (a) the amount of the fee awarded under the Equal Access to Justice Act, and (b) this opinion.

## I.

### The Date from Which Payments Are Due

In early 1980 Mr. Coup, a school teacher, applied for Social Security disability benefits, alleging a disability as of January 18, 1980. His application was denied in June of 1980 and he did not pursue it through the administrative process. In June of 1982 Coup filed a new application, again alleging an onset date in January, 1980. Coup's 1982 application was denied, after reconsideration, in November, 1982, and he did not appeal that denial. In January of 1984 Coup filed his last application for benefits, once again alleging disability as of January, 1980. After a hearing in which evidence was submitted and considered respecting his condition back to January of 1980, the Administrative Law Judge concluded that Coup was not disabled, since he could return to work as a teacher. Coup appealed that ruling to the Appeals Council of the Social Security Administration, submitting to that body evidence of a further injury since the hearing before the Administrative Law Judge. The Appeals Council considered both the new evidence and that before the Administrative Law Judge, but denied Coup's request for review. Thus

the Administrative Law Judge's order became the final order of the Secretary.

Coup then commenced a civil action, pursuant to 42 U.S.C. § 405(g), for review in the district court of the decision denying benefits. The district court denied the Secretary's motion for summary judgment, and granted Coup's motion. The court concluded that the agency record was fully developed and, on the basis of that record, that Coup is entitled to disability benefits. The judgment, dated March 4, 1986, provided that the Secretary's decision is reversed, and that Coup "is found eligible for disability insurance benefits in accordance with the January 19, 1980 stated date of onset." The Secretary did not appeal from this final judgment.

Despite the plain language of the judgment, the Social Security Administration, while awarding retroactive benefits, did so only to January 1, 1983 rather than to January 18, 1980. Coup then moved in the district court, under the same docket number as his original complaint, for an order directing that, in accordance with the court's judgment, benefits be paid from January 18, 1980.

The Secretary opposed Coup's motion on the ground that limitation of retroactive benefits to January 1983 was consistent with section 223(b) of the Social Security Act, 42 U.S.C. § 423(b), and the implementing regulation, 20 C.F.R. § 404.621(a)(1)(i). That statute and regulation limit the payment of retroactive benefits to a 12–month period prior to the date of the application. It was the Secretary's position, accepted by the district court despite its prior final judgment, that the relevant application date was in January of 1984.

We disagree. Section 223(b) does provide that an applicant for benefits for any month "shall be entitled to such benefit for such month if such application is filed before the end of the 12th month immediately succeeding such month." 42 U.S.C. § 423(b). Coup contends, however, that in adjudicating his 1984 application the Secretary reopened his 1980 and 1982 applications. The Secretary has discretion to reopen prior applications within four years of

notice of the initial determination for "good cause." 20 C.F.R. §§ 404.987, 404.988(b) (1987). Good cause includes the furnishing of "new and material evidence." 20 C.F.R. § 404.989(a)(1). Beyond four years, a claim may be reopened on narrower grounds. 20 C.F.R. § 404.988(c). The initial adverse determination on Coup's 1980 application was made in June of 1980; his January 1984 application was within four years of that date. Thus the 1980 application could properly be reopened upon the furnishing of new and material evidence.

■■ A decision of the Secretary declining to reopen a claim is not judicially reviewable. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). This court has held, however, that we will examine the record to determine whether or not a reopening has occurred. A reopening, and thus a waiver of any claim of administrative res judicata, will be found "where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits ..." *Kane v. Heckler,* 776 F.2d 1130, 1132 (3d Cir.1985). *See also Purter v. Heckler,* 771 F.2d 682 (3d Cir.1985). It is not our role to determine whether the Secretary had good cause for reopening, for in that respect his decision is not judicially reviewable. Rather, we look at the administrative record to determine whether an explicit or a *de facto* reopening has occurred. *See Cleaton v. Secretary, Dept. of Health and Human Services,* 815 F.2d 295 (4th Cir. 1987); *Jelinek v. Heckler,* 764 F.2d 507 (8th Cir.1985); *Taylor v. Heckler,* 738 F.2d 1112 (10th Cir.1984); *McGowen v. Harris,* 666 F.2d 60 (4th Cir.1981).

■■ Plainly there was a *de facto* reopening here. Both the Administrative Law Judge and the Appeals Council considered evidence that Coup became entitled to disability benefits in January of 1980. That evidence was relied upon extensively by the district court in its holding that Coup was disabled as of January 18, 1980. At no point in the administrative proceeding after Coup's January 1984 application did the agency rely on administrative res judicata,

or state that it was not considering Coup's claim of disability prior to a particular date. Thus this is not a case where the agency explicitly considered such earlier evidence solely for the purpose of determining whether the claimant was disabled within the twelve months preceding the most recent application. When the case was first before the district court, the Secretary did not object that principles of administrative *res judicata* precluded consideration of the claim that Coup was entitled to disability benefits going back to 1980. When a judgment was entered directing payment of benefits from January 18, 1980 forward, the Secretary took no appeal. Such an appeal, on administrative res judicata grounds, would have been unavailing, since the judgment is entirely consistent with the de facto reopening which occurred at the agency level.

■ Thus the district court erred in relying on 42 U.S.C. § 423(b) to deny Coup's motion to enforce the judgment. Indeed the Secretary does not in this court defend the district court ruling on the ground advanced to that court. Instead, it claims here, for the first time, that the district court lacked jurisdiction to consider Coup's motion, because he failed to exhaust administrative remedies with respect to the claimed error in limiting benefits to January 1983 forward. Since this exhaustion argument was not made in the district court, it should not be considered here. This is not a case in which an alternative ground for affirmance, not relied on in the trial court, is advanced in support of a judgment. Since the district court considered the merits of Coup's claim, its order denying the claim would have to be vacated, not affirmed, if the Secretary's exhaustion argument were to prevail. The Secretary urges that because the exhaustion rule is "jurisdictional" it can be raised at any time. *See* Fed.R.Civ.P. 12(h)(3). In Social Security Act cases, however, while presentation of the claim to the Social Security Administration may go to the subject matter jurisdiction of the district court, exhaustion of administrative remedies is not jurisdictional and may be waived. *Mathews v. Eldridge*, 424 U.S. 319, 328, 96

S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 767, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975). The Secretary's decision to litigate Coup's motion on the merits in the district court should, for the sake of orderly judicial administration, be deemed a waiver of the exhaustion requirement, which cannot be withdrawn after a ruling on the merits.

■ Alternatively, assuming that the exhaustion of administrative remedies contention is properly before us, we note that it is without merit. Coup exhausted available administrative remedies once. He properly sought relief under 42 U.S.C. § 405(g), and obtained a final judgment. Enlarging the exhaustion rule so as to require exhaustion of internal agency remedies when the agency fails to obey a final judgment would make a mockery of the judicial review scheme provided by Congress. The district court had subject matter jurisdiction by virtue of Coup's original petition, and authority under the All Writs Act to enter an appropriate order making effective its final judgment on this petition. 28 U.S.C. § 1651 (1982); *see also* 5 U.S.C. § 706(1) (1982); *United Steelworkers of America v. Pendergrass*, 819 F.2d 1263 (3d Cir.1987).

It is thus clear that the order denying Coup's motion to enforce the original judgment directing that benefits be paid from January 18, 1980 must be reversed.

## II.

### Attorneys Fees Under the Equal Access to Justice Act

■ Coup applied for an award of attorneys fees against the government under the Equal Access to Justice Act. The district court denied that application on the ground that the position of the Secretary in this proceeding was substantially justified. Obviously our reversal of the court's ruling with respect to the date from which benefits should be paid requires a reconsideration of that ruling, at least with respect to the claims for benefits from January, 1980 to January, 1983. The ruling also applied, however, to Coup's successful recovery of

benefits for the twelve months thereafter. Thus we must address it.

The district court's discussion of Coup's motion for a fee award is cryptic:

The government opposes this motion arguing that the Government's position in defending this case was substantially justified. The Government carefully distinguishes between the reversal of a decision by the Secretary which is not based on substantial evidence of record, and an award of attorneys fees under EAJA because the Government's position in defending the Secretary's decision lacks substantial justification. After a careful review of the arguments, we cannot find that the Government's position in this action warrants an award of fees under EAJA. Therefore we DENY plaintiff's Motion for Attorney's Fees under EAJA.

To the extent that the quoted language suggests that the court need only evaluate the justification for the government's litigation position, it is clear error. The statute defines the "position of the United States" to mean, "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon · which the civil action is based...." 28 U.S.C. § 2412(d)(2)(D) (Supp. III.1985). Thus the court was required to evaluate both the justification for the agency's denial of benefits, including retroactive benefits, and the justification of its resistance, in litigation, to Coup's complaint and his motion to enforce the judgment. As the quoted ruling discloses, the district court did no more than evaluate the legal arguments asserted in court on behalf of the Secretary.

▪ Our review of the district court's denial of attorneys fees under the Equal Access to Justice Act is plenary. _Stokes v. Bowen,_ 811 F.2d 814, 816 (3d Cir.1987); _Washington v. Heckler,_ 756 F.2d 959, 963 (3d Cir.1985). Thus the fact that the district court failed to evaluate the government's legal position at the agency level, or

its factual position at either level, does not affect our review. As we noted in _Stokes v. Bowen,_

"Substantial justification 'constitute[s] a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous.' " _Washington v. Heckler,_ 756 F.2d 959, 961 (3d Cir.1985) (quoting _Dougherty v. Lehman,_ 711 F.2d 555, 563 (3d Cir.1983)). The burden of proving substantial justification is on the government. 756 F.2d at 961. To carry his burden, the Secretary must demonstrate "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory [he] propounds; and (3) a reasonable connection between the facts alleged and the legal theory advanced." _Id._ (citing _Citizens Council of Delaware County v. Brinegar,_ 741 F.2d 584, 598 (3d Cir. 1984); _Dougherty,_ 711 F.2d at 564).

811 F.2d at 816. Thus the government's burden involves both a legal and a factual component. Moreover, "for the government, in relying entirely on a legal argument, to establish that its position was substantially justified, it must demonstrate that that argument presented an unsettled or close question of law." _Lee v. Johnson,_ 799 F.2d 31, 38 (3d Cir.1986).[1] Finally, as to the facts,

agency action found to be ... unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary circumstances could permit such an action to be found substantially justified under the Act.

_Stokes,_ 811 F.2d at 816 (internal quotation omitted). _See Washington v. Heckler,_ 756 F.2d 959, 968 (3d Cir.1985) (Aldisert, J., concurring).

▪ In Coup's case there were no unsettled or close questions of law with respect to his entitlement to disability benefits as a result of his January 1984 applica-

---

1. In _Lee v. Johnson,_ Judge Rosenn would have imposed an even higher burden on the government: a showing that its position was "clearly reasonable, well founded in law and fact, solid though not necessarily correct." 799 F.2d at 41. The record in this case does not require that we consider applying that stricter standard.

tion. Nor were there any unsettled or close questions of law as to the effect of the judgment directing payment of benefits from January 18, 1980. Thus the issue of his entitlement to an award under the Equal Access to Justice Act turns upon whether, given the absence of substantial evidence for denial of benefits, the government has shown extraordinary circumstances for disregarding that absence.

The district court, in its earlier decision which the Secretary did not appeal, held not only that the Secretary's decision was not based on substantial evidence, but also that the record was sufficient to direct an award of disability benefits rather than simply remand the matter for further findings. Two aspects of the Secretary's determination were particularly egregious. First, the Secretary totally ignored the medical findings that Coup had a significantly limited range of motion in his right knee and hip. Second, the Secretary ignored the limitations which Coup's chronic dizziness and tendency to black out placed on his ability to return to his former occupation as a classroom teacher. It bears emphasis that Coup has repeatedly passed out (even in class) and that one of his treating physicians, Dr. Evans, advised him not to teach because of the harm to his health. The Secretary had no reasonable basis for ignoring evidence. The government argues that "range of motion testing of appellant's right knee by Dr. Rommel yielded greater results than those achieved by Dr. Tymoczko." Brief at 17. The government neglects to point out, however, that Dr. Rommel found a 40 degree range of motion, still only one-third of normal. (R. 190, 211). The government points to no evidence at all in the record to support the Secretary's conclusion that "there is no significant limitation of range of motion of hip or knee." (R. 30). The government has not even attempted to point to facts supporting the Secretary's conclusion that "there is no evidence that [Coup's dizziness and lightheadedness] have imposed any significant limitations on claimant's ability to function." (R. 30). Thus, the government has totally failed to meet its burden of showing extraordinary circumstances justifying our disregarding the absence of substantial evidence for the denial of benefits.

Since there is no reasonable basis in law or in fact for the Secretary's agency or litigation positions, Coup was as a matter of law entitled to an award of attorneys fees, at the rate of $75 an hour, increased by a percentage equal to the increase in cost of living, as measured by the consumer price index, since 1981. *Allen v. Bowen*, 821 F.2d 963 (3d Cir.1987). Since Coup is also the prevailing party on this appeal, he is also entitled to an award for the hours which his attorney expended in prosecuting this appeal. Determination of the amount of that award may be made by the district court on remand. *Guido v. Schweiker*, 775 F.2d 107, 110 (3d Cir.1985).

### III.

#### Attorneys Fees Under the Social Security Act

 When Coup, after two unsuccessful applications for disability payments, retained an attorney, he executed an agreement that he would pay the attorney 25% of the gross amount collected. That agreement, and the district court's ruling as to the amount Coup should pay his attorney, require that we consider the operation of section 206 of the Social Security Act, 42 U.S.C. § 406, and the interrelationship of that section with the Equal Access to Justice Act.

In the Social Security Amendments of 1965, concerned that some attorneys were charging excessive fees for prosecuting Social Security benefit claims, Congress adopted a new subsection dealing with that issue:

(b)(1) Whenever a court renders a judgment favorable to a claimant under this title who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 205(i)

[42 U.S.C. 405(i) ], certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

(2) Any attorney who charges, demands, receives, or collects for services rendered in connection with proceedings before a court to which paragraph (1) is applicable any amount in excess of that allowed by the court thereunder shall be guilty of a misdemeanor and upon conviction thereof shall be subject to a fine of not more than $500, or imprisonment for not more than one year, or both.

Social Security Amendments of 1965, Pub. L. 89–97, Title III § 332; 79 Stat. 286, 403; 42 U.S.C. § 406(b) (1982). The effect of this provision was to fix a maximum percentage for contingent fees; to permit recovery of such fees only out of past due benefits; and to require court approval for whatever amount of such fees should be paid. The statute can also be read to make illegal any fee arrangement for representation in court on a claim for social security benefits, other than a contingent fee arrangement.[2] The 1965 statute refers only to amounts recovered by reason of a judgment.

In 1967, Congress revisited the fee area, amending section 206(a) of Title II to provide:

Whenever the Secretary, in any claim before him for benefits under this title, makes a determination favorable to the claimant, he shall, if the claimant was represented by an attorney in connection with such claim, fix (in accordance with the regulations prescribed pursuant to the preceding sentence) a reasonable fee to compensate such attorney for the services performed by him in connection with such claim. If as a result of such determination, such claimant is entitled to past-due benefits under this title, the Secretary shall, notwithstanding section 205(i) [42 U.S.C. 405(i) ], certify for payment (out of such past-due benefits) to such attorney an amount equal to whichever of the following is the smaller: (A) 25 per centum of the total amount of such past-due benefits, (B) the amount of the attorney's fee so fixed, or (C) the amount agreed upon between the claimant and such attorney as the fee for such attorney's services.

Social Security Amendments of 1967, Pub. L. 90–248, Title I, § 173; 81 Stat. 821, 993–94; 42 U.S.C. § 406(a) (1982).

On their face, these statutes seem to relegate to the court the determination of fees when benefits are paid as a result of "a judgment favorable to the claimant," which can only happen after an agency denial of benefits, while relegating to the agency the determination of fees when it "makes a determination favorable to the claimant." In *Guido v. Schweiker,* 775 F.2d 107 (3d Cir.1985), however, this court aligned itself with those courts of appeals which have interpreted the two subsections to mean that even in cases where the Social Security Administration has *denied* benefits the Secretary, not the court, makes the determination of the fee award for services before that agency.[3] *Cf. Webb v. Richardson,* 472 F.2d 529, 536 (6th Cir.1972); *Taylor v. Heckler,* 608 F.Supp. 1255, 1260 n. 1 (D.N.J.1985). Judge McCree's opinion in *Webb v. Richardson,* holding that only the tribunal, agency or court, which ultimately upholds the claim for benefits should make the award, appears more consistent with the plain language of the separately enact-

---

**2.** In light of the principle of strict construction of criminal statutes, it is also possible to read the statute as only rendering illegal fees in excess of those allowed by a court. Under this interpretation, since the court only fixes fees when the claimant is successful, fee agreements are left untouched when the claimant is not successful. The court need not resolve this issue in this case. Moreover, it does not appear that the limitation on fees in section 206(b) has any application to a recovery-of-overpayment case. *See Whiteman v. Bowen,* 640 F.Supp. 992 (S.D.Ohio 1986).

**3.** *See Gardner v. Menendez,* 373 F.2d 488 (1st Cir.1967); *Whitt v. Califano,* 601 F.2d 160 (4th Cir.1979); *Fenix v. Finch,* 436 F.2d 831 (8th Cir.1971); *MacDonald v. Weinberger,* 512 F.2d 144 (9th Cir.1975).

ed statutory provisions. Moreover, since the record on which the district court acts is always made before the agency, it seems unlikely that Congress intended—in 1965—that the court which reversed a denial of benefits should disregard the services performed in making that record. This panel, however, is bound by *Guido*.

Compounding the apparent anomaly of the court being unable to evaluate the services performed in creating the record on which it acts is our holding in *Chernock v. Gardner*, 360 F.2d 257 (3d Cir.1966), that the Secretary's fee determination is not judicially reviewable. *Chernock v. Gardner* was decided before the enactment of the 1967 amendment to section 206(a), and dealt with the Secretary's fee determination made pursuant to agency fee regulations then in effect. *See Swotes v. Gardner*, 392 F.2d 428 (3d Cir.1968). Without addressing the possible effect of the 1967 statute, this court in *Guido v. Schweiker* assumed that the *Chernock* rule still governed. 775 F.2d at 108. *But see McCarthy v. Secretary of Health and Human Services*, 793 F.2d 741 (6th Cir.1986) (under *Webb*, Secretary sets fees when he awards benefits, but his determination is unreviewable).

A further complication is the difference between the limitation on fees in section 206(a) and section 206(b). The latter, governing fees for court work, provides for a fee only out of past-due benefits. The value of prospective benefits cannot be taken into account in calculating the 25 percent maximum fee. The former, governing fees for work before the agency, provides that the Secretary shall fix a fee whenever he makes a determination favorable to the claimant. The 25 per cent limitation in section 206(a) refers only to the Secretary's obligation to certify for payment to attorneys out of past-due benefits. Conceivably the Secretary could, taking into account the value of the attorneys' services in securing future benefits, *fix a fee* in excess of 25 percent of past-due benefits while only *certifying for payment* 25 percent of past-due benefits. Moreover, section 206(a) gives the Secretary plenary power to regulate fees before the agency. The Secretary has

interpreted this to permit the fixing of fees even where the applicant is unsuccessful. 20 C.F.R. § 404.1725(b)(2) ("We may authorize a fee even if no benefits are payable.") Section 206(b) gives the courts no analogous power.

■ The Secretary has adopted regulations dealing with representation of parties. 20 C.F.R. Ch. III, Subpart R. Those regulations appear to recognize the bifurcated fee determination method which we adopted in *Guido v. Schweiker*, for they provide:

(a) **Representation of a party in court proceedings.** We shall not consider any service the representative gave you in any proceeding before a State or Federal court to be services as a representative in dealings with us. However, if the representative also has given service to you in the same connection in any dealings with us, he or she must specify what, if any, portion of the fee he or she wants to charge is for services performed in dealings with us. If the representative charges any fee for those services, he or she must file the request and furnish all of the information required by § 404.1725.

20 C.F.R. § 404.1728(a). The cross reference to section 404.1725 is to the regulation setting forth the required contents of a request that the agency approve a fee. That section also sets forth the standards which will be applied:

(b) **Evaluating a request for approval of a fee.** (1) When we evaluate a representative's request for approval of a fee, we consider the purpose of the social security program, which is to provide a measure of economic security for the beneficiaries of the program, together with

—

(i) The extent and type of services the representative performed;

(ii) The complexity of the case;

(iii) The level of skill and competence required of the representative in giving the services;

(iv) The amount of time the representative spent on the case;

(v) The results the representative achieved;

(vi) The level of review to which the claim was taken and the level of the review at which the representative became your representative; and

(vii) The amount of fee the representative requests for his or her services, including any amount authorized or requested before, but not including the amount of any expenses he or she incurred.

(2) Although we consider the amount of benefits, if any, that are payable, we do not base the amount of fee we authorize on the amount of the benefit alone, but on a consideration of all the factors listed in this section. The benefits payable in any claim are determined by specific provisions of law and are unrelated to the efforts of the representative. We may authorize a fee even if no benefits are payable.

20 C.F.R. § 404.1725(b). In cases in which a court has ordered benefits, the agency has, of course, denied them. Thus the regulations appear to require that the agency apply the quoted standards to services in making a record which it, though not a court, deemed inadequate to support an award.

In the instant case, after Coup obtained a final judgment, the Social Security Administration issued an award certificate awarding him retroactive benefits, but retaining 25 per cent of that award, or $6,433, to be applied toward his attorneys fee. The award certificate states:

Section 206(b)(1) of the Social Security Act provides that your attorney may ask the court to approve a fee not to exceed 25 percent of past benefits due you. The past-due benefits are those which are payable through February 1986, the month before the month the court's decision was rendered. Accordingly, we are withholding the amount of $6,433 which represents 25 percent of your past-due benefits of $25,732 pending action by the court on the amount of the attorney's fee. The amount withheld will be applied against the fee set by the court and will be mailed directly to your attorney; any

remaining amount will be sent to you. The amount of your first payment includes benefits through April 1986.

Thus the award certificate makes no reference to any prior or subsequent determination of fees for services before the agency. Although the record is not clear in this respect, it appears that no request has yet been made to the agency for the approval of a fee. "The representative must file a written request with [the agency] before he or she may charge or receive a fee for his or her services." 20 C.F.R. § 404.1720(b). Moreover, "an attorney should file a request for approval of a fee, or written notice of the intent to file a request ... within 60 days of the date the notice of favorable determination is mailed." 20 C.F.R. § 404.1730(c). Since the agency apparently waits for the court to set fees for services rendered in court proceedings before setting fees for services rendered before it, we interpret this regulation to allow the attorney 60 days from the date of final judicial action under section 206(b) to request approval of a fee.

In his application to the district court pursuant to section 206(b), Coup's attorney requested approval of the full amount of 25% of past-due benefits. In support of that application he filed an itemized list of hours expended in processing the appeal in the district court, a copy of the Social Security Administration award certificate quoted above, a copy of the contingent fee agreement with Coup, and a statement by Coup that in his opinion the attorney has earned the full amount and should be paid $6,433. The Secretary, however, filed a reply in opposition to the petition, opposing the section 206(b) award in excess of $75 per hour, and suggesting exclusion of any time expended in preparation of the fee petition.

The district court, recognizing that under *Guido v. Schweiker* it lacked authority to authorize payment for services performed before the agency, ruled that compensation for court services would be made on an hourly basis. The court continued:

We have consistently determined $75 per hour to be a reasonable hourly rate in the relatively simply and routine proceed-

ings which social security appeal representation involves. *See Umstead v. Heckler*, Memorandum Order of November 26, 1985, Civil Action No. 84–2, Erie; *also see* Equal Access to Justice Act, [4]2 U.S.C. § 2412(d) (setting an hourly rate of $75 in analogous cases). The court therefore awarded $1,470 representing 19.6 hours of service (including the time expended in preparation of the fee petition) at an hourly rate of $75.

■ There are several problems with the district court's consistent application of a $75 per hour rate in social security appeals. First, that rate is actually lower than would be paid currently under the Equal Access to Justice Act. *Allen v. Bowen*, 821 F.2d 963 (3d Cir.1987). Moreover the statutory limits selected by Congress in that fee-shifting statute, which is also a waiver of the government's sovereign immunity, are not closely analogous to fee awards paid by clients out of recoveries. Sections 206 is not a waiver of sovereign immunity, but rather a statutory interference with the attorney client contractual relationship which would otherwise be determined by the marketplace for legal services. Even with respect to market determined fees, courts retain some supervisory authority if a dispute arises between attorney and client. *See, e.g. McKenzie Construction, Inc. v. Maynard*, 758 F.2d 97 (3d Cir.1985). Under section 206(b), however, the fees remain subject to court approval even when, as in this case, the client expresses satisfaction with the requested fee and the requested fee is not in excess of the statutory maximum. Finally, we note that the application of a consistent hourly rate in the district court is at odds with the more flexible standards which the Social Security Administration will apply in making a fee award in the same case. 20 C.F.R. § 404.1725(b).

■ Coup's attorney contends that in making a section 206(b) determination the district court should, at a minimum, apply to the reasonable hourly market rate a contingency multiplier which recognizes both the risk of nonpayment and the delay in receipt of payment. The posture of this appeal is such that it is inappropriate to make a detailed disposition of that conten-

tion. In Part II above, we hold that the court must make an award under the Equal Access to Justice Act. Recovery against the government under that Act is not limited to 25% of past-due benefits. Moreover, in determining the number of hours reasonably expended, the court should take into account not only past-due but also prospective benefits. The client will be credited with payments by the government. 28 U.S. C. § 2412 note (Supp. III 1985) (Savings Provisions). Thus it is conceivable that the award against the United States will moot the section 206(b) issues. If, however, the award required by Part II of this opinion proves to be less than 25% of the total past-due benefits (including both the $25,-732 in past-due benefits already awarded and the additional past-due benefits which will be awarded as a result of Part I hereof), the court should, in fixing the amount to be paid by Coup, apply a method more flexible than the consistent application of a fixed $75 per hour rate.

Because we are remanding, we deem it advisable to add a few general comments to guide the district court. This court has long held that contingency enhancements are appropriate. *See Lindy Bros. Bldrs., Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir.1973). Although the Supreme Court's recent decision in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, — U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), severely limits the occasions in which contingency enhancement is appropriate in fee-shifting cases, its impact on this case is rather minor. In this case, the fees which are sought to be enhanced are to be paid by the client, not by a defendant. Thus the concerns which motivated the plurality in *Delaware Valley* are not implicated at all. *See* 107 S.Ct. at 3086–87. Instead, a contingency enhancement in this case simply recognizes that Coup was willing to pay more to induce his attorney to take a case where there was a risk of nonpayment. We see nothing in *Delaware Valley* to prevent a contingency enhancement in these circumstances.

■ The Supreme Court in *Delaware Valley* did, however, state that an adjustment for delay in receipt of fees is a sepa-

rate issue from an adjustment for contingency. 107 S.Ct. at 3081. This court's prior caselaw had considered delay as an element to be considered in setting a contingency enhancement. *See In re: Fine Paper Antitrust Litigation,* 751 F.2d 562, 583 (3d Cir.1984). We must realign our approach with the Supreme Court's teachings. Therefore, if on remand the request for fees under section 206(b) does not become moot, the district court should consider any appropriate compensation for delay in receipt of payment separately from any appropriate enhancement for contingency.

▉ In addition, since the district court may be recalculating a fee under section 206(b), we think it is appropriate to comment on the Secretary's role in that process. Nothing in the Social Security Act explicitly confers such a role upon the Secretary. Yet section 206(b) prevents the collection of a contingent fee from the client absent district court approval, even when, as here, the client expresses satisfaction with the maximum permissible contingent fee. For the district courts to rule, it is probably necessary that they look to the Secretary for guidance, even when the client is satisfied.[4] It seems to us, however, that the Secretary's role should be no more than to explain what in his judgment an appropriate fee for the work in the district court would be, if calculated in accordance with the standards the agency will apply under 20 C.F.R. § 404.1725(b) for work before it. In this case the Secretary's opposition to the section 206(b) request appears inconsistent with those standards. *Cf. Lewis v. Secretary of Health and Human Services,* 707 F.2d 246 (6th Cir.1983) (in view of humanitarian policy of the Social Security program to benefit the disabled, where Secretary raises sufficient doubts about accuracy of fee petition, Assistant United States Attorney should be permitted to cross-examine plaintiff's counsel).

▉ Lastly, there is no basis, statutory or contractual, for charging Coup for the time spent by his attorney litigating the attorney's claim to fees under section 206(b).

In recent years this court has seen hundreds, and the district courts in the circuit have seen thousands of cases demonstrating the strong need for adequate legal representation of claimants seeking recovery of disability benefits under the Social Security Act. The complex scheme which we have outlined above, involving bifurcated fee determinations, seems poorly designed to encourage such representation, and should be reconsidered not only by this court in banc, but also by Congress. While it remains in place, however, the courts' applications of section 206 should be made with the thought in mind that the benign parens patriae purpose of the 1965 and 1967 fee statutes was to maximize benefits paid to applicants, not to discourage the bar from representation. Undue rigidity in limiting attorneys in contingent fee situations to hourly rates appropriate for non-contingent fee contracts may have that unfortunate consequence. The result then might be to minimize rather than maximize benefits.

### IV.

The order fixing January 1983 as the date from which disability payments should be paid to Coup will be reversed and the case remanded for the entry of an appropriate order enforcing the judgment ordering that benefits be paid from January 18, 1980. The order denying Coup's motion for an award of fees under the Equal Access to Justice Act will be reversed, and the case remanded for the determination of an award consistent with this opinion. The order limiting the fee to be paid to Coup's attorney for work in the district court will be vacated, and the case remanded for further proceedings under section 206(b) consistent with this opinion.

ALDISERT, Circuit Judge, concurring.

I join in the majority opinion completely, but am constrained to add a caveat. As the author of that portion of the opinion in *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 762 F.2d 272, 281–82 (3d Cir.1985), approving the use of the contingency factor that was reversed in

---

**4.** Of course, the client must be given notice of the fee request and an opportunity to object.

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), I am a little uneasy about permitting a contingency enhancement here. I know the adage "once burned, twice shy," but shy I am not and twice I may be burned.