

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2002

# Kaszer v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-1978

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Kaszer v. Comm Social Security" (2002). *2002 Decisions.* Paper 421.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/421

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-1978
_____

ANN A. KASZER,

Appellant,

vs.

*LARRY G. MASSANARI, ACTING
COMMISSIONER OF SOCIAL SECURITY,

*Pursuant to Fed. R. App. P. 43(c)
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 99-cv-01346)
District Judge:  The Honorable Gustave Diamond
_____

SUBMITTED MAY 1, 2002

BEFORE: NYGAARD, ROTH, and WEIS, Circuit Judges.

(Filed: July 19, 2002 )
_____

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

Appellant's claim for supplemental security income and disability
insurance benefits was denied by the Social Security Administration, but was granted by
the District Court.  Subsequently, the court granted Appellee's Motion for Clarification
and amended its order to correct a clerical error involving the date Appellant's benefits
should commence.  Appellant challenges that order.  We will vacate in part and remand
because we find the agency reopened Appellant's first application.

I.

Appellant, Ann A. Kaszer, has twice filed for disability insurance benefits
(SSDI) and supplemental security income (SSI) pursuant to Titles II and XVI of the
Social Security Act, respectively.  She first filed on or about December 1, 1993.  The
agency denied that application, and Kaszer did not request reconsideration.  Kaszer filed
a second set of applications on September 6, 1995 alleging an inability to work
beginning June 9, 1992 due to obesity, diabetes mellitus, arthritis, chest pain, eye
implants, poor vision, and depression.  This application was denied initially and upon
reconsideration.  Kaszer requested and received a hearing before an ALJ who denied
Kaszer's claim for benefits.  She filed an appeal with the Appeals Council, but it denied

review of her claim.

Kaszer then commenced a civil action in the District Court. The court granted Kaszer's motion for summary judgment reversing the ALJ and issued an order on June 26, 2000 awarding benefits retroactive to July 2, 1992. The Commissioner subsequently filed a Motion for Clarification arguing that the applicable statutory and regulatory provisions do not permit the Commissioner to pay benefits to Kaszer back to July 2, 1992 because SSDI benefits may be paid only for the twelve months prior to filing an application and because there is no retroactivity for SSI benefits. Since Kaszer's second application was filed on September 6, 1995, the Commissioner contended she could not legally pay benefits retroactive to July 2, 1992, as the District Court had ordered. The District Court agreed. It vacated and amended its previous order, saying that it was a "clerical error" which can be corrected under Rule 60 of the Federal Rules of Civil Procedure. The court issued a new order on February 20, 2001 instructing the Commissioner to pay benefits to Kaszer "consistent with this opinion and the applicable statutes and regulations." Kaszer appeals from that order.

We review de novo the District Court's grant of summary judgment, and we apply the same standard of review as did the District Court; that is, we must uphold the Commissioner's decision if there is substantial evidence on the record supporting it. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000); Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001).

II.

Kaszer challenges the District Court's modification of its June 26, 2000 order. She argues that if any modification of the District Court's order was appropriate, the order should have been amended to reflect an onset date of December 1, 1992, which is twelve months prior to the filing of Kaszer's first application which she contends was reopened during the administrative process.

A.

The applicable statutes and regulations provide that the Commissioner may pay SSDI benefits under Title II only for twelve months prior to the date a claimant files an application. 42 U.S.C. 423(b); 20 C.F.R. 404.621(a)(1)(i). There is no retroactivity provision under Title XVI for SSI benefits. 42 U.S.C. 1382(c)(7); 20 C.F.R. 416.501. Therefore, even if the filing date of Kaszer's first application -- December 1, 1993 -- is used as the appropriate starting point, benefits could be awarded retroactive only to twelve months before then, which is December 1, 1992. But the District Court's initial order awarded benefits retroactive to July 2, 1992, which is even earlier than December 1, 1992, and thus must have been a clerical error. The District Court committed no error by amending its earlier opinion, but whether the District Court's amended order itself is correct has become the issue in this case.

B.

The primary dispute here is about locating the appropriate starting point for computing Kaszer's SSDI benefits. Is Kaszer eligible for benefits back to December 1, 1992, which is twelve months before the filing of her first application, or is she only eligible for benefits back to September 6, 1994, which is twelve months before the filing of her second application? It is noteworthy that the District Court did not directly answer this question in its amended opinion. Rather than saying Kaszer is eligible for benefits as of a certain date, the court merely ordered "the granting of benefits consistent with this opinion and the applicable statutes and regulations." The parties have interpreted this as meaning that benefits are to be paid with reference to the filing date of Kaszer's second application.

Kaszer argues that the appropriate starting point is the filing of her first application and that she should be awarded SSDI benefits back to December 1, 1992. If the ALJ reopened Kaszer's first application, either explicitly or de facto, when she considered Kaszer's second application, then benefits should be determined by reference to the filing date of the first application. See Purter v. Heckler, 771 F.2d 682, 693 (3d Cir. 1985); Coup v. Heckler, 834 F.2d 313, 317-18 (3d Cir. 1987), abrogated on other grounds by Gisbrecht v. Barnhart, __ U.S. __, 122 S. Ct. 1817 (2002). To determine the appropriate starting point for computing benefits, then, we must determine whether Kaszer's first application was reopened.

1.

Before we consider Kaszer's arguments, however, we should address the

Commissioner's contention that Kaszer cannot raise on appeal any arguments that her prior applications were de facto reopened or that "good cause" existed to reopen her prior applications because Kaszer did not raise these arguments below. The Commissioner argues that it is "abundantly clear" that Kaszer did not raise these arguments below since the District Court's opinion makes no mention of Kaszer's first set of applications.

We think Kaszer has done enough to preserve the reopening issue. In footnote 1 of her Brief in Support of Summary Judgment, Kaszer states:

> The issue of re-opening this prior application was deferred since the entire claim was denied. In the event of a remand for payment or on the merits, we reserve the right to have this issue revisited for reconsideration by the Commissioner to establish good cause for re-opening as per 20 CFR 404.911 and any other applicable regulations that may apply.

Kaszer probably expected that if she won at summary judgment, the District Court would remand her case back to the Commissioner, and there she would argue that her first application had been reopened. That is not the course her case took, as her win at summary judgment resulted in an award of benefits by the District Court rather than a remand. Then, however, the District Court amended its order, and she brought this appeal before us. In any event, it is clear that Kaszer intended to reserve her right to argue reopening at some point.

2.

Kaszer argues that her first application was reopened during the administrative process. A short review of the law surrounding reopening of Social Security claims is warranted to help understand her position.

When a claimant files successive applications, res judicata may be invoked by the agency to avoid entertaining each subsequent request based on the same issues. See Purter v. Heckler, 771 F.2d 682, 691 (3d Cir. 1985). Res judicata applies if the agency has "made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. 404.957. However, the ALJ is not required to apply res judicata, and there are circumstances when a final determination may be reopened either upon the claimant's request or the agency's own initiative. See 20 C.F.R. 404.988.

Additionally, it is not necessary for the claimant to make a formal petition for reopening to occur. Purter, 771 F.2d at 695. For example, we have found that a reopening occurred where the claimant called his petition a "third application" rather than a "petition to reopen." Id.

Finally, a decision by the agency not to reopen a claim is not judicially reviewable. See Califano v. Sanders, 430 U.S. 99 (1977); Coup, 834 F.2d at 317. But "we will examine the record to determine whether or not a reopening has occurred." Coup, 834 F.2d at 317. We will find a reopening, and thus a waiver of res judicata, "where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits." Kane v. Heckler, 776 F.2d 1130 (3d Cir. 1985). We may find after looking at the administrative record than the reopening has been either explicit or de facto. Coup, 834 F.2d at 317.

3.

Kaszer argues there was a de facto reopening in her case which supports the District Court's initial award of benefits back to July 2, 1992, or, alternatively, supports an award back to December 1, 1992. Kaszer contends we can find a reopening by either of two paths:

First, she suggests a reopening under 20 C.F.R. 404.988(a). That regulation provides that a determination may be reopened "[w]ithin 12 months of the date of the notice of the initial determination, for any reason." Unfortunately for Kaszer, this path is not available to her. Kaszer says that her second application "was filed within one year of receipt of the initial denial." (emphasis added). But the applicable regulation states that it is the "date of the notice," not the date of receipt, which is relevant. The denial of Kaszer's first claim is dated September 1, 1994. Her second application is dated September 6, 1995. Clearly, it was not filed "[w]ithin 12 months of

the date of the notice of the initial determination," so this avenue has been foreclosed.

Kaszer offers no authority, nor have we found any, suggesting that we should not read the regulation for what it says on its face. That is, the regulation allows reopening without cause "within 12 months of the date of the notice." It does not say, "within 12 months of receipt of the notice." In addition to there being no textual support nor case authority for Kaszer's position, reading the regulation as making the relevant date the notice date rather than the receipt date makes sense because this regulation is also a limitation upon the ability of the Secretary to reopen a determination without cause. The Secretary may reopen a decision within twelve months "for any reason." If the twelve month period began tolling on the date that the claimant received notice of the determination, the Secretary could not possibly know precisely when the twelve month period actually began to run. The more reasonable interpretation is that the twelve month period began to run when the notice was dated, a date which is easily discernable to both parties. Therefore, we find that Kaszer's first application cannot be reopened under 20 C.F.R. 404.988(a).

The second way Kaszer suggests we can find that her initial determination has been reopened is via 20 C.F.R. 404.988(b). That section allows a determination to be reopened within four years of the date of the notice for "good cause." "Good cause" is defined in 20 C.F.R. 404.989 and includes "New and material evidence is furnished." Kaszer's second application was filed within four years of the date of the notice of the initial determination, and she alleges the "good cause" requirement has been met in that she submitted "new material information that was not part of the December 1, 1993 application."

There is some ambiguity in our caselaw over whether we must find there was "good cause" to reopen an application before we can find a de facto reopening occurred. The agency may reopen a prior application only for "good cause," yet we have no jurisdiction to review an agency decision not to reopen. See Califano v. Sanders, 430 U.S. 99 (1977); Coup, 834 F.2d at 317. In a typical case where we find that a de facto reopening has occurred, the agency made no mention of the prior application, so it made no decision on whether or not to reopen it. We then look at the whole record and conclude that, even though the agency did not discuss the prior application, it essentially reconsidered the prior application in its consideration of the new application. The unanswered question is, do we have to find that the agency would have been able to reopen the application if it wanted to? That is, do we have to find that the agency had "good cause" to reopen the application even though the agency ignored the reopening issue?

One of our cases suggests that the answer to that question is "yes." In Purter v. Heckler, 771 F.2d 682 (3d Cir. 1985), a case where we found the Secretary had de facto reopened the claimant's prior applications, one of our findings was that "we find that there was 'good cause' for reopening his earlier claims." Id. at 695. In stating our holding, we said,

> Since the Secretary reconsidered Purter's claims on the merits and because there was "good cause" for reopening the earlier claims, we find that there was a de facto reopening of Purter's prior claims.

Id. at 696. This language makes it sound like we need to find two things to find a de facto reopening: (1) reconsideration of the claims on the merits, and (2) "good cause" for reopening. There is no further discussion in Purter about whether a finding of "good cause" was a necessary condition for us to find a de facto reopening, but our language seems to imply it.

In contrast, our decision in Coup v. Heckler indicates that a finding of "good cause" is not necessary. There we said,

> A reopening, and thus a waiver of any claim of administrative res judicata, will be found "where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits..." Kane v. Heckler, 776 F.2d 1130, 1132 (3d Cir. 1985). See also Purter v. Heckler, 771 F.2d 682 (3d Cir. 1985). It is not our role to determine whether the Secretary

had good cause for reopening, for in that respect his decision is not judicially reviewable. Rather, we look at the administrative record to determine whether an explicit or a de facto reopening has occurred.

Coup, 834 F.2d at 317 (emphasis added). This language implies that we do not have to find "good cause" as a condition of finding a de facto reopening. We think the language in Coup is clearer and more directly on point than our language in Purter, and we will follow Coup for purposes of this appeal. We do not have to find that the Secretary had "good cause" before we can consider whether the Secretary de facto reopened Kaszer's prior application.

4.

The final question is whether a reopening of Kaszer's first application occurred at the administrative level. In conducting our analysis,

we will examine the record to determine whether or not a reopening has occurred. A reopening, and thus a wavier of any claim of administrative res judicata, will be found "where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits . . ."

Coup, 834 F.2d at 317 (quoting Kane v. Heckler, 776 F.2d 1130, 1132 (3d Cir. 1985)). Even if a prior determination was not explicitly reopened, we may find that a de facto reopening has occurred. Id.

There is an initial question here of whether we have jurisdiction to find a de facto reopening. The ALJ's opinion notes that Kaszer had previously filed applications for SSI and SSDI in 1993 and that they were both denied. But the ALJ found that "[i]t is not necessary to consider the question of whether the unfavorable decision made with respect to the prior claim should be reopened and revised." If the ALJ had explicitly decided not to reopen Kaszer's first application, and Kaszer argued on appeal that the ALJ's decision was wrong, then we would not have jurisdiction because we cannot review the propriety of the ALJ's decision. Califano v. Sanders, 430 U.S. 99 (1977); Coup, 834 F.2d at 317. But Kaszer is not contesting the propriety of the ALJ's reopening decision on appeal. Instead, she is arguing that the ALJ actually reopened her prior application, despite any statements by the ALJ to the contrary. We do have jurisdiction to consider this claim because if the ALJ did in fact reopen the prior application and reach a decision on merits, then she made precisely the sort of agency decision which we may review pursuant to  205(h) of the Social Security Act, 42 U.S.C.  405(h).

This finding of jurisdiction is supported by our decision in Coup v. Heckler where we said:

A decision of the Secretary declining to reopen a claim is not judicially reviewable. Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). This court has held, however, that we will examine the record to determine whether or not a reopening has occurred.

Coup, 834 F.2d at 317. The key word here is "however." We recognized in Coup that we cannot review the propriety of the Secretary's decision not to reopen a claim, but in the next sentence we said "however"  meaning "notwithstanding that fact"  we still have jurisdiction to consider whether a reopening has actually occurred. Thus, we may consider whether the ALJ de facto reopened Kaszer's first application.

We are aware that in a series of unpublished and per curiam opinions, the Court of Appeals for the Tenth Circuit has said that an "express refusal to reopen normally precludes a claim of de facto reopening by the administrative law judge and is also not reviewable by this court," Cook v. Chater, No. 95-7095, 85 F.3d 640 (table), 1996 WL 223711 (10th Cir. May 3, 1996), at *2 n.2, but we do not find these opinions persuasive. See also Gilbert v. Chater, No. 96-1405, 110 F.3d 73 (table), 1997 WL 158139 (10th Cir. Apr. 2, 1997); Brown v. Sullivan, 912 F.2d 1194, 1196 (10th Cir. 1990) (per curiam). All of these cases rely upon a footnote in Taylor v. Heckler, 738 F.2d

1112, 1115 n.6 (10th Cir. 1984), as well as the Supreme Court's decision in Califano v. Sanders, 430 U.S. 99, 107-08 (1977), for support. The footnote in Taylor says, "When the Social Security Administration refuses to reopen a claim for benefits, that decision is unreviewable." Taylor, 738 F.2d at 1115 n.6 (emphasis supplied). This is merely a restatement of the Supreme Court's holding in Califano that when the agency refuses to reopen a claim, federal courts do not have jurisdiction to consider the propriety of that decision. It is an entirely different thing to say, as does Cook, that an explicit refusal to reopen precludes a federal court from possibly finding that a de facto reopening has occurred. Neither Califano nor Taylor supports this latter proposition, and we think the statements to the contrary in the unpublished opinions cited above are incorrect.

Finally we get to the question of whether or not a de facto reopening actually occurred in this case. In one formulation of our test for a de facto reopening, we said:

> A reopening, and thus a waiver of any claim of administrative res judicata, will be found "where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits . . ."

Coup, 834 F.2d at 317 (quoting Kane v. Heckler, 776 F.2d 1130, 1132 (3d Cir. 1985)). The first question, then, is whether the ALJ "addressed" the earlier decision. It is true that the ALJ mentioned the earlier decision, but we are not convinced that mere mentioning is what we had in mind in Coup. The ALJ said:

> It is not necessary to consider the question of whether the unfavorable decision made with respect to the prior claim should be reopened and revised.

[Tr. 13]. The ALJ did not say that she was using the prior adjudication for its res judicata effects or that she was only considering the second application for the time period following the first decision. We think that Coup requires that the ALJ "address" the earlier decision vis-a-vis res judicata. The agency must address whether the prior adjudication will be used for its preclusive effect or whether it will be reopened. No such expression was made here, so we move on to the second part of the Coup test to see if the ALJ "review[ed] the entire record in the new proceeding and reache[d] a decision on the merits."

In the section of her opinion entitled "Evaluation of the Evidence," the ALJ went through Kaszer's medical evaluations and other evidence and concluded that she was not entitled to benefits. Some of the evidence she considered was relevant to Kaszer's first application which was filed in December 1993. For example, she found:

> The objective medical evidence establishes that the claimant was diagnosed with insulin dependent diabetes mellitus in June 1993. She had been controlling her diabetic condition with oral medical prior to June 1993 (Exhibit 23).

[Tr. 15]. Similarly, she found:

> Ms. Kaszer complained of being severely depressed in October 1993, but was unwilling to begin anti-depression treatment (Exhibit 31, page 23).

Among the exhibits listed in the administrative record as "Exhibits in Connection with Current Application" are

> Exhibit 23: Hospital Records for admission on June 4, 1993 through discharge on June 10, 1993, from Medical Center of Beaver County.

> Exhibit 24: Medical Reports dated August 10, 1993, by Dr. Gary Harvanich, M.D.

> Exhibit 26: Emergency Room Records dated September 7, 1993 and November 24, 1995, from The Medical Center of

Beaver County.

Exhibit 27: Medical Reports dated July 26, 1994 and June 7, 1996, by Dr. George R. Zambelli, Jr., M.D., for services provided November 30, 1992 to December 13, 1995.

Exhibit 31: Medical Records covering the period December 1, 1992 to November 8, 1996, from The Family Practic [sic] Center.

[Tr. 2]. We assume the ALJ utilized these exhibits in reaching her decision because she says she made her conclusions "[a]fter careful consideration of all the evidence." [Tr. 13].

It is apparent that the ALJ considered evidence that was relevant to Kaszer's first application and based its decision on all of the evidence. The second application was filed on September 6, 1995, so benefits could only be awarded back to September 6, 1994. Yet the ALJ considered evidence of Kaszer's condition back in 1992 and 1993, a period for which Kaszer would not be entitled benefits under her second application. This is consistent with reconsidering Kaszer's first application, which was filed on December 1, 1993 and could award benefits back to December 1, 1992. The ALJ did not narrow the time period under consideration by using the decision on Kaszer's first application for its res judicata effects. Instead, the ALJ "review[ed] the entire record in the new proceeding and reach[ed] a decision on the merits," which is what we said in Coup would constitute a de facto reopening. 834 F.2d at 317.

We are aware that some courts of appeals have held that a "review of [a claimant's] medical history does not amount to the reconsideration 'on the merits' necessary to constitute a de facto reopening of the earlier application" because such a review is often necessary to determine whether the claimant was disabled within the twelve months prior to filing the second application. Rohrich v. Bowen, 796 F.2d 1030, 1031 (8th Cir. 1986); Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 193 (1st Cir. 1987) (per curiam); Moore v. Chater, No. 95-35764, 97 F.3d 1460 (table), 1996 WL 498916 (9th Cir. Aug. 8, 1996) (unpublished); Boone v. Apfel, No. 98-7176, 189 F.3d 477 (table), 1999 WL 668253 (10th Cir. Aug. 26, 1999) (unpublished). We, too, have indicated in dicta that "where the agency explicitly considered such earlier evidence [of a claimant's medical history] solely for the purpose of determining whether the claimant was disabled within the twelve months preceding the most recent application" we will not on that basis alone find a de facto reopening. Coup, 834 F.2d at 318.

There is, admittedly, a fine line between considering a claimant's medical history solely for the purpose of establishing whether the claimant was disabled and actually reconsidering that evidence. The Commissioner argues that the agency made a proper inquiry into the additional evidence without reopening Kaszer's prior application. That same argument was advanced in Young v. Bowen, 858 F.2d 951, 955-56 (4th Cir. 1988), but there the court found that

despite the protestations on appeal that the medical evidence was reviewed simply to determine whether there was "good cause" to reopen appellant's previous applications, a careful reading of the decision reveals an implicit analysis of the nature of Young's disability in 1979 and 1980. Since the Secretary has attempted to support his decision in some part by weighing the full range of medical evidence, we are thus free to determine whether that decision is supported by substantial evidence.

Id. Similarly, the ALJ here analyzed Kaszer's medical history and supported her decision by "careful consideration of all the evidence", [Tr. 13], such that her actions were sufficient to reopen Kaszer's first application de facto. See also Crady v. Sec'y of Health & Human Servs., 835 F.2d 617, 620 (6th Cir. 1987) (finding a reopening where "[t]he ALJ made an extensive analysis of the claimant's medical condition . . . [for] a period as to which no benefits could have been awarded absent a reopening"); Lewis v. Apfel, 236 F.3d 503 (9th Cir. 2001) ("Res judicata does not apply when an ALJ later considers 'on

the merits' whether the claimant was disabled during an already-adjudicated period.").

                                 III.

        Accordingly, for the above reasons, we find the ALJ reopened Kaszer's first application de facto.  We will vacate in part and remand to the District Court for a determination of the appropriate date for Kaszer's benefits to commence in light of this reopening.

_____

TO THE CLERK:

        Please file the foregoing opinion.


                              /s/ Richard L. Nygaard
                              Circuit Judge